STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,

v.

Mary MORGANSTEIN, et al., Exceptions of Ardeis H. Myers, et al., Exceptions of State Highway Commission of Missouri to Commissioners' award to Ardeis H. Myers, Flora E. Myers, William G. Partin, Trustee, A. H. Myers, Jr., Trustee, Lizzie Belle Kroencke, Pleasant Hill Bank, Paul Metz, City Collector of Kansas City, Missouri, and George Lehr, Collector of Revenue of Jackson County, Missouri, Appellants.

No. 60863.

Supreme Court of Missouri, En Banc.

Sept. 11, 1979.

Rehearing Denied Nov. 14, 1979.

Harry P. Thomson, Jr., Thomas F. Fisher, Kansas City, for appellants.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr., John B. Ewing, Jr., Mo. State Hwy. Comm., Kansas City, for respondent.

RENDLEN, Judge.

A. H. Myers, Jr., as the personal representative of the estates of Ardeis Myers, Sr. and Flora E. Myers, and as trustee under a deed of trust,[1] appeals from the judgment entered on jury-tried exceptions to a commissioners' award in this highway condemnation case. Transferred here after opinion in the Western District, Court of Appeals, the following questions are presented: (1) Did the answers given by the court to questions submitted by the jury during its deliberations constitute prejudicially erroneous supplemental instructions? (2) In view of condemnor-plaintiff's failure to timely move for substitution of the personal representative of a deceased condemnee who was a tenant by the entirety at the time of the commissioners' award, was it proper to render a joint judgment against the condemnees requiring repayment by them of amounts received under the commissioners' award in excess of the subsequent jury verdict? (3) Is remand for determination of individual liability proper, when one of the parties is no longer before the court? Affirmed in part, the cause is remanded for further proceedings as to particular aspects of the cause hereinafter discussed.

The State Highway Commission petitioned to condemn certain land in which the principal interest was held by Ardeis Myers and Flora Myers as tenants by the entirety. Commissioners were appointed and on February 2, 1971 they assessed damages for the taking in the amount of $387,000. Plaintiff filed its timely exceptions to the commissioners' award, and the next day Ardeis and Flora Myers and A. H. Myers, Jr., Trustee, filed their "joint and separate exceptions." The monies were paid into the registry of the court and pursuant to application by the Myers, the court on February 23 ordered the circuit clerk to issue a check for $387,-000 "payable to the order of Ardeis H. Myers, Flora E. Myers, William G. Partin, Trustee, A. H. Myers, Jr., Trustee, Lizzie Belle Kroencke, Pleasant Hill Bank, Paul Metz, City Collector of Kansas City, Missouri, and James P. Aylward, Collector of Revenue of Jackson County, Missouri." Nothing further in this record reflects what happened to the check's proceeds or the extent of any payees' interest therein. The petition for condemnation simply named each as a defendant.

On May 13, 1975, plaintiff moved to substitute Flora Myers and A. H. Myers, Jr., co-executors of the estate of Ardeis Myers, in the stead of Ardeis Myers, who had died January 20, 1974, some sixteen months earlier. Plaintiff filed no claim against the decedent's estate but its motion to substitute, filed more than 10 months following the first publication of letters testamentary, was sustained and the proposed substitution of parties ordered by the court.

At the commencement of trial in May, 1976, counsel for the Myers moved orally to dismiss the exceptions of Flora E. Myers as an individual and of Flora E. Myers and A. H. Myers, Jr. as co-executors of Ardeis Myers' estate. On that motion the court entered its order of dismissal.[2]

The jury returned a verdict on the exceptions finding damages in the amount of $150,000, ($237,000 less than the commissioners' award) whereupon the court ordered "that . . . defendants pay the plaintiff, the State Highway Commission of Missouri the sum of Two Hundred Thirty-seven Thousand and no/100 Dollars ($237,-000) plus interest . . . ."

Defendants Flora E. Myers, A. H. Myers, Jr., Trustee, and Flora Myers and A. H. Myers, Jr., as co-executors of the estate of

1. When the appeal was lodged Ardeis Myers, an original defendant, had died and Flora E. Myers and A. H. Myers, Jr., appealed as co-executors of his estate. Flora E. Myers also appealed as an individual. After submission of the cause in this Court, counsel for appellants filed suggestions of death for Flora E. Myers and moved to substitute A. H. Myers, Jr., executor of her estate. The motion was sustained; thus A. H. Myers, Jr., appears before this Court in three capacities.

2. While it is not specifically shown whether the exceptions of A. H. Myers, Jr., as trustee were dismissed, the parties apparently considered such had been done and proceeded as though that was the case.

Ardeis Myers, Sr., moved for a new trial or alternatively for modification of judgment asserting, among others, that the judgment was void "because there is no proration of the amount of excess on the amount of judgment entered against these defendants" and apportionment was not possible because no evidence appeared concerning division of the proceeds. Overruling these motions the court directed that the parties appear at a hearing to determine who received the proceeds of the commissioners' award. This appeal followed.

I

We first consider appellant's contention that the judge's answer to certain questions posed in a note sent by the jury during its deliberations constituted reversible error. Resolution of this issue requires examination of pertinent portions of the record reflecting that occurrence.

THE COURT: What has now been marked as Court's Exhibit 3 is a note from the jury which says as follows: 'Is this suit for damages only. Have the people been paid for the land taken.' Signed by the foreman.

The answer is no, isn't it?

MR. SCHRADER [Counsel for plaintiff]: That requires a little fuller answer than that. This is a—I will say this is a suit for damages. The people have not been paid for the land.

MR. THOMSON [Counsel for defendant]: I think you're going to have to say that the people have not been paid for the land taken. You see what I think they are getting at, Your Honor—and I am stating this so we all may consider the problem—I think what they may be asking is this for damages to the remainder only, and have they been paid for the right-of-way or the portion actually taken. That is the way I would interpret that.

THE COURT: I don't think that is any question.

MR. THOMSON: So then I would have to say they have not been paid, that I would suggest, with Mr. Schrader's agreement, that the Court say they have not been paid, and that this is a suit for damages.

MR. CASLAVKA [Counsel for defendants]: And for the land taken.

MR. THOMSON: And for the land.

THE COURT: Why do we have to get complicated? Why can't we answer the question no? It says have the people been paid for the land taken. Isn't the answer no?

MR. SCHRADER: Right.

MR. THOMSON: Right.

THE COURT: I don't know what that first question means, 'Is this lawsuit for damages only?'

MR. SCHRADER: That's what's causing me concern.

THE COURT: Why don't I answer this way, I do not understand your first question. If you are uncertain, read the instructions again. With regard to the second question the answer is no.

MR. SCHRADER: That is fine.

THE COURT: Is that all right?

MR. THOMSON: Yes, Your Honor.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: The measure of damages is for land taken and I've written at the bottom of Court's Exhibit No. 3 as follows: 'I do not understand the first question. If you are uncertain, read the instructions again.

With regard to the second question, the answer is—no.' Signed by me.

Any further suggestions?

MR. THOMSON: No.

■ Defendants contend the court's answer to the jury's question constituted an erroneous modification of the court's instruction on damages, MAI 9.02, in violation of Rule 70.02(b). That prejudice resulted because "the Court was in effect telling the jury that the defendants had not been paid for the land, and, thus, this was the total measure of damages." We do not believe the import of the court's answer was as defendants claim. The court in its response to the jury's first inquiry merely referred them to the instructions. While a trial

court risks reversal to further instruct the jury outside MAI, the definition of damages in MAI 9.02, previously submitted as instruction No. 2, answered counsel's announced concern that the jury would consider damages only to the remainder and similarly defendants present contention that the jury considered damages only for the land taken. As to the jury's second question, counsel for appellant not only acceded to the court's one word answer "No," but suggested that the court should answer "that the people have not been paid for the land taken." The error, if any, in giving answer to the second question was invited by appellant who may not now be heard to complain. *Myers v. Buchanan*, 333 S.W.2d 18, 23 (Mo. banc 1960). *Fletcher v. Cummings*, 532 S.W.2d 890, 891 (Mo.App.1976).

## II

We next consider appellant's claim that the trial court's failure to determine the several liability of those to whom proceeds were paid jointly, rendered the judgment void.

Defendants rely heavily on *State ex rel. State Highway Commission v. Eilers*, 445 S.W.2d 374, 377 (Mo.1969), wherein the Court described the apportionment scheme for distribution of condemnation awards under § 523.053, RSMo 1969.

In *Eilers*, as here, the trial court entered an *in personam* judgment requiring that defendants repay condemnor the amount by which the jury had reduced the commissioners' award. The court made no apportionment of several liability. However, as pointed out at 445 S.W.2d at 376, there was "no finding or recital in the judgment that this money or any portion of it was ever disbursed by the Circuit Clerk, nor [was] there any separate order or entry in the transcript which so indicates." Thus it was held that the action continued to be one *in rem* and the trial court's *in personam* judg-

ment against the defendants was void. The Court discussed apportionment under § 523.053 as an appropriate procedure on remand, not as the *ratio decidendi* for its order.

Appellant also refers to *State ex rel. State Highway Commission v. Thelnor, Inc.*, 485 S.W.2d 443 (Mo.App.1972), *appeal after remand*, 543 S.W.2d 229 (Mo.App.1976). There the owner of property encumbered by a deed of trust obtained a court order releasing the commissioners' award to him alone and the money was so paid. 543 S.W.2d at 230. As the appellate court noted, this procedure represented an " 'irregularity' under the law in effect on February 5, 1965," the date of the court's order. After the jury awarded a lesser amount, the trial court entered a joint and several judgment against the owner and the holder of the deed of trust for the amount to be returned to the Commission. In the first appeal, the Appellate Court reversed and remanded because no separate apportionment of the amount to be returned had been determined by the trial court. 485 S.W.2d at 446. The Court of Appeals apparently relied on § 523.053, but that statute was not in effect at the time of the trial court's judgment and could not therefore have produced reversal. The opinion also cites *Eilers*,[3] but the *Eilers* ruling was based not on the lack of apportionment; instead as discussed above the appellate court reversed the trial court's judgment because the order constituted an *in personam* judgment when the record disclosed the action was one *in rem*.

Thus while neither *Eilers* nor *Thelnor* provide authority for ruling that the judgment of the trial court in the case at bar was void, we believe remand is necessary to determine the individual liability of the separate defendants for the excess award, and this is so whether or not § 523.053 controls.[4] The obligation to repay

---

**3.** Section 523.053 was enacted and became effective late in 1965. Laws 1965, pp. 660–661.

**4.** It can be argued that § 523.053 does not provide the exclusive means of withdrawing

commissioners' awards from the registry of court, for the statutory language states a defendant "may" file a motion for distribution pursuant to its provisions. On the other hand, defendants did not file a motion for distribution

the Commission all amounts obtained above the jury award springs from basic principles of equity and fairness which dictate that defendants simply have no right to more than the jury found was due for the property taken. The situation resembles that in which an already-satisfied judgment is reversed on appeal. The successful appellant has the right to restitution of money lost by reason of the erroneous or void judgment. *DeMayo v. Lyons*, 360 Mo. 512, 228 S.W.2d 691, 692 (1950). "The proceeding, after the reversal of the judgment, to make restitution, whether by separate suit or motion in the case, is governed by broad equitable considerations. It is a question *ex aequo et bono*, as in suits for money or property had and received." *Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis Co.*, 291 Mo. 54, 236 S.W. 58, 62 (1921). Of course, equity in such cases holds a defendant liable to repay only that which he may have received of the proceeds, whether directly or beneficially. *White v. McCoy Land Co.*, 101 S.W.2d 763, 765 (Mo.App.1936), *aff'd. sub nom. White v. Scarritt*, 341 Mo. 1004, 111 S.W.2d 18 (1937). *See also* 58 C.J.S. *Money Received* § 23 (1948). But when, as in the case *sub judice*, the commissioners' award has been paid to joint parties, it is the burden of each to prove the lesser amount for which he may be liable. The condemnor has no responsibility for the apportionment of a damage award, *State ex rel. State Highway Commission v. Conrad*, 310 S.W.2d 871, 877 (Mo.1958), nor is it required to trace the distribution of the proceeds to the parties. Application of these principles requires vacation of the trial court's judgment with directions that it enter an order allowing appellant to move within such reasonable time as the court may direct for a determination of the liability of each of the joint parties or their estates (except the Estate of Ardeis Myers, Sr.) for repayment of the excess of the commissioners' award.

In connection with this it is appropriate to resolve the peculiar problems arising from the Myers' ownership of the land as tenants by the entirety.

 The Court of Appeals, writing when Flora E. Myers was still a party to this appeal, ruled that because the proceeds of the commissioners' award were held by the entireties, Flora as survivor remained liable for the amount of the jury's reduction of the commissioners' award. This result would obtain however only if the proceeds were not dissipated or changed into non-entirety property at the time of Ardeis Myers' death in 1974.[5] "Personal estates held by the entirety can be changed to other types of estates by consent, agreement or acquiescence, . . ." *Coffey v. Coffey*, 485 S.W.2d 167, 170 (Mo.App.1972). "The courts have had some difficulty with withdrawals from entirety accounts. . . . [T]he use of entirety funds by one of the owners becomes a matter of intention, and this intention must often be determined from the facts and circumstances which imply that intention. The husband and wife can by consent, agreement, or acquiescence change the character of entirety property. . . . Certainly the acquiescence of one tenant by the entirety to the purchase (from the joint funds) of property taken in the name of the other would destroy the entirety interest (and the resulting trust) from following the proceeds. Otherwise the character of entirety interest would extend on ad infinitum." *Cooper v. Freer*, 385 S.W.2d 340, 345 (Mo.App.1964) (citations omitted). "[W]henever a portion of an entirety account is withdrawn for the personal use of one of the parties by the consent of the other, there is a change in the character of the ownership as to that part so withdrawn." *Ray v. Ray*, 336 S.W.2d 731, 734 (Mo.App.1960). Whether a tenancy by the entirety follows every exchange of the joint proceeds depends primarily on the intent of

---

under § 523.053, which would seem to be the prerequisite for their invoking subsection 3 on apportionment of liability for restitution. However, in view of our disposition of the case, we need not pass on the applicability of § 523.053 to the facts before us.

5. If the proceeds were converted to non-entirety property and taken by Flora Myers as her own prior to the death of Ardeis, it goes without saying that she may be held responsible for the proportional amount of the award's reduction.

the parties to the tenancy. *Ambruster v. Ambruster*, 326 Mo. 51, 31 S.W.2d 28, 37 (Mo.1930); *Harrellson v. Barks*, 326 S.W.2d 351, 360 (Mo.App.1959). The record here tells nothing of the flow or form of the proceeds after the check for the commissioners' award was delivered and cashed nor of the character of ownership on the date of Ardeis Myers' death. Accordingly, the parties must be afforded an opportunity to explain what happened to those monies and whether a tenancy by the entireties existed in any of the excess proceeds on that date. Only to the extent that funds were held by the entireties at the time of Ardeis Myers' death will the estate of Flora E. Myers have succeeded to liability for the amount jointly received from the State Highway Commission. This, however, would be in addition to the amount her estate might be liable for proceeds taken or held by her outside the entirety estate at the time of her husband's death.

### III

■ Finally, we examine appellant's argument that the untimely substitution of the co-executors for Ardeis Myers in 1975 was invalid and that this deficiency cannot now be rectified. Ardeis Myers, the argument runs, was an indispensable party without whom (or absent substitution) final judgment could not have been entered and accordingly the judgment "against these defendants" was void and further proceedings may not now be had in the cause. We disagree.

Pertinent to this issue are the following:

February 23, 1971 – The court ordered disbursement of the commissioners' award by issuance of a check to Ardeis and Flora Myers, A. H. Myers, Jr., and others.

January 20, 1974 – Ardeis Myers died.

---

6. Neither appellant nor respondent have addressed the effect of our Rule 52.13(a) on this substitution of parties, nor shall we. Neither is it necessary to consider appellant's argument that § 473.360 of the probate code forbids judgment against the co-executors in view of our determination that they were not properly in the case.

During the week
of July 10, 1974 – First publication of notice of letters testamentary in Ardeis Myers' estate.

May 13, 1975 – Plaintiff moved to require the substitution of the co-executors of Ardeis Myers' estate in the place and stead of defendant Ardeis Myers.

May 13, 1975 – The trial court without notice or hearing sustained the motion for substitution.

May 24, 1976 – Trial on the exceptions of the parties began.

Section 507.100.1(3), RSMo 1969, provides in relevant part, "If the death [of a party] occurs prior to final judgment . . . and substitution or motion therefor is not made . . . within *nine months* after the first published notice of letters testamentary or of administration, the action shall be dismissed as to the deceased party." (Emphasis ours.) It was stipulated by counsel for the Commission that the first publication of letters of administration of the Ardeis Myers estate occurred within one week following July 10, 1974. The motion and order to substitute parties for Ardeis Myers in the condemnation action did not come until *ten months* later. Clearly the statutory period had run and it was error to permit the substitution.[6]

■ While it is well established that lack of personal jurisdiction can be waived by the entry of a general appearance, our examination of the record reveals no general appearance was made. At the opening of the trial on the exceptions, counsel for defendants first dismissed the exceptions of Flora E. Myers. Then counsel argued that the exceptions of Ardeis Myers were no longer before the court and an extended colloquy resulted, which we quote at length below.[7]

---

7. The colloquy between counsel for the parties and the court occurring prior to presentation of evidence was as follows:

MR. THOMSON [counsel for defendants]: Now, if the Court please, I suggest further that the exceptions of Ardeis H. Myers, defendant, no longer is [sic] pending.

\* \* \* \* \* \*

It is clear from the record that defense counsel attempted to have the exceptions of Ardeis Myers and those of the plaintiff as to defendant Ardeis Myers dismissed contending there had been an erroneous substitution in the case and preserved his objection when the trial court insisted that the co-executors were before the court. It was only after the trial court declared the validity of the questioned substitution that coun-

The letters of admission were issued on July 10, 1974, and the first publication of letters occurred within that week.

Will you stipulate to that, Mr. Schrader?

MR. SCHRADER [counsel for plaintiff]: You do not have to—you are representing to me those are the dates. I have no personal knowledge. I will so stipulate.

MR. THOMSON: Those are the dates. Now, if the Court please, I will ask Mr. Schrader to stipulate that no claim or notice of suit has been filed in the period as required by statute within the claim time of Ardeis H. Myers, Estate No. 120287.

MR. SCHRADER: I will not so stipulate. It is our position that there is no such requirement. You are stating as required by law. There is no such requirement.

MR. THOMSON: Let's don't argue about the law, Mr. Schrader. I am simply asking you to stipulate, in fact, what you know, the State made no claim in the estate of Mr. Myers.

MR. SCHRADER: No, we did not make—I will so stipulate.

THE COURT: Mr. Thomson, is it your claim, in order to get back any excess that they claimed that they paid in that they would have to file a claim?

MR. THOMSON: Right, sir. They would have to perfect a notice of claim against the estate within the claim period, because after the date of taking, any claim for refund is personalty.

THE COURT: That will not be in issue before the jury?

MR. THOMSON: No, sir.

THE COURT: It will only come up if, in fact, the jury allowed less in this case than the Commissioners awarded?

MR. THOMSON: Yes, sir.

THE COURT: Then it would be a legal matter?

MR. THOMSON: Right. I think all the necessary facts are now stipulated, therefore, we submit to the Court—we ask, at this time, that the Court dismiss both the exceptions of Missouri State Highway Department, plaintiff, and the exceptions of Ardeis H. Myers, as a legal matter, Your Honor.

THE COURT: Do you represent the executor, executrix, co-executor and co-executrix, Flora Myers and Ardeis H. Myers?

MR. THOMSON: Both are in court. I do represent them and represent the estate.

THE COURT: Are they executor and executrix parties?

MR. THOMSON: No.

MR. SCHRADER: Yes, they are. They were substituted and ordered by this court order as substituted parties, and Mrs. Myers was also a named party.

MR. THOMSON: Not in this here capacity as an executrix.

MR. SCHRADER: No. She has been substituted.

THE COURT: Everybody be quiet for just a minute, please.

Yes, I have made an order, which is dated May the 13th, 1975, which the last paragraph of the order says, 'It is ordered that Flora Myers and Ardeis H. Myers, Jr., be substituted as party defendants in this case in the place and stead of Ardeis H. Myers, deceased.'

Therefore, since there has been an order substituting them for him, there is no need to dismiss his exceptions, so what we have then are exceptions in the name of and under the control of Flora Myers and Ardeis H. Myers as executor and executrix of the estate of Ardeis H. Myers, deceased. Do you, on behalf of those two people, Mr. Thomson, wish to dismiss their exceptions?

MR. THOMSON: I dismiss their exceptions, and I further, Your Honor, point out to the Court—and move that the claim of any claimed exception of the estate against them be dismissed, because I respectfully point out to the Court that order was entered after the running of any time period in the claim substitute after the letters of administration were issued and published. The letters of administration, Your Honor, were issued July 10, 1974, and as I recall, the order of substitution was signed December '75.

THE COURT: No. May 13.

MR. THOMSON: May 13, I beg your pardon.

THE COURT: So what I would like to resolve now, are you, as attorney for executor—how do you designate them, co-executor and co-executrix?

MR. THOMSON: Yes, Your Honor.

THE COURT: —and of the estate of Mr. Myers, are you requesting their exceptions be dismissed?

MR. THOMSON: Yes, Your Honor.

THE COURT: The record will show that the exceptions of the co-executrix and co-executor of the estate of Ardeis H. Myers, deceased, are dismissed at their request.

Anything else?

MR. THOMSON: Your Honor, I want to make the record absolutely clear that we are not waiving our objection to the claim of the State, plaintiff, by proceeding at this time. We are reserving all proper objections as to their claim for any refund that might exist.

sel for the defense dismissed the exceptions brought by Ardeis Myers. Such cannot be said to have constituted an admission that the court had personal jurisdiction nor a waiver of the objection made. We find the court did not have jurisdiction of the personal representatives of the estate of Ardeis Myers when the exceptions were tried.

While the court had no jurisdiction as to the Estate of Ardeis Myers, it does not follow that the court was powerless to render judgment against the remaining parties. Appellant argues in the most conclusory terms that the estate of Myers is a "necessary" party to the action without citing Rule 52.04, "Joinder of Persons Needed for Just Adjudication," or attempting to apply its principles. We have previously concluded that each defendant is liable for the amount of the excess award he actually or beneficially received, and no more. Thus we cannot perceive how "complete relief cannot be accorded among those already parties," Rule 52.04(a)(1), or how those already parties might be subject to double liability or inconsistent obligations as addressed by Rule 52.04(a)(2)(ii). In view of the limitations period for claims against the estate contained in § 473.360.1, RSMo 1978, which this Court has held to be jurisdictional, *State ex rel. Whitaker v. Hall*, 358 S.W.2d 845 (Mo. banc 1962), it does not appear how the interests of the estate could be harmed by proceeding. See Rule 52.-04(a)(2)(i). Consequently, there exists no bar to a remand of this case for further proceedings as to those defendants other than the estate of A. H. Myers, Sr.

When a condemnation award has been distributed before exceptions are tried, but the defendants have not utilized the procedure allowed in § 523.053, it would seem better practice for the court to determine in advance the percentage of any increase or decrease each defendant might have in the outcome. However, we do not find it necessary to require a retrial of the exceptions in this case despite the absence of such a percentage determination, because the total damages have been established by the verdict which has gone unchallenged as to amount on this appeal. Further the remaining defendants are burdened with proving the limit of their liability for repayment.

Appellant has urged that an Indiana decision, close on its facts to the case at bar, requires a result different from that we have reached. In *Whitlock v. Public Service Co. of Indiana, Inc.*, 239 Ind. 680, 159 N.E.2d 280 (1959), appellants husband and wife owned real estate as tenants by the entirety over which condemnor took an easement. The appraisers awarded damages of $5,797.50 deposited by condemnor with the court, and appellants withdrew that sum as permitted by statute. Prior to trial on the exceptions the wife died. No personal representative was substituted for her in the pending action. The jury found damages only in the amount of $2,000 and on that verdict the trial court entered judgment against the surviving husband for the "sum of $3,617.50," the amount of the excessive withdrawals by the husband and wife.[8]

The Indiana Court reversing and remanding noted there was no evidence "as to how the money was divided between the husband and wife after it was withdrawn from the clerk's office." 159 N.E.2d at 284. Stating further at 285:

> The Indiana law impresses the proceeds from property held by the entireties with the rights of survivorship, the same as the original property from which it came. It, however, does not necessarily follow that if one of the spouses dies before the judgment reducing the award of the appraisers that the surviving spouse is *liable* for the proceeds *previously taken by the other spouse.*
>
> \* \* \* \* \* \*
>
> [I]f the proceeds had been dissipated or disposed of before the wife died, then the

---

8. The difference between the appraisers' award and the verdict was $3,797.50 as contrasted with the $3,617.50 recited in the trial court's judgment. No explanation for this difference appears in the reported decision.

husband took no part of such proceeds *by reason of her death.* There can be no tenancy by the entireties in proceeds which are no longer in existence. (Emphasis in original.)

To this point our views coincide with those of the Indiana court. However, rather than remanding for an evidentiary hearing on the question of the joint or several liability of the various defendants for the excess as we now do, that court held that the condemnor should have substituted the personal representative for the deceased wife. *Id.* at 286. That the personal representative was entitled to participate in the trial, and notwithstanding the Indiana one year statutory limitation on substitution of parties, on remand the substitution could apparently be made and a new trial on all issues be had. *Id.* In the case before us the time for substitution had passed and there can be no claim against the estate of Ardeis Myers, Sr., for the excess. However, as previously noted, the obligation to repay is several and the cause may proceed as to those defendants other than the estate of Ardeis Myers, but only on the issue of their liability for the excess.

The judgment as to the amount of damages awarded for the taking is affirmed; however, the cause is ordered dismissed as to the estate of Ardeis Myers, Sr. That portion of the judgment ordering the original defendants to pay the State Highway Commission $237,000 plus interest, and granting the Commission execution therefor, is vacated and the cause remanded for further proceedings consistent with the views expressed in this opinion.

BARDGETT, C. J., DONNELLY, SEILER, MORGAN, JJ., and FINCH, Senior Judge, concur.

HIGGINS and WELLIVER, JJ., not participating because not members of the Court when the cause was submitted.