STATE of Missouri ex rel. STATE
HIGHWAY COMMISSION,
Plaintiff-Appellant,

v.

E. A. GOULD et al., Exceptions of
Phillip DeGrace et al.,
Defendants-Respondents.

No. KCD30031.

Missouri Court of Appeals,
Western District.

Oct. 1, 1979.

Motion for Rehearing and/or Transfer
Denied Dec. 31, 1979.

Application to Transfer Denied
Feb. 11, 1980.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr., Terry P. Thompson, Asst. Counsel, Missouri State Highway Commission, Kansas City, for plaintiff-appellant.

John H. Norton and Wilbur L. Pollard, Norton & Pollard, Inc., North Kansas City, for respondent Phillip DeGrace.

Keith E. Witten, Sandler, Balkin, Hellman & Weinstein, Kansas City, for defendants-respondents, Merchants-Produce Bank and Sheldon P. Sandler, Trustee.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Presiding Judge.

The State Highway Commission appeals trial court dismissals of exceptions filed to the award of the commissioners in a highway condemnation case and the dismissal of

a party to the action before the exceptions were dismissed.

The procedural background of the case is critical to the disposition of the issues posed. The proceedings in the condemnation case resulted in an award in favor of the landowners in the amount of $75,692.00 by the commissioners. At that time, the parties were four individuals, two named DeGrace, and the Merchants-Produce Bank and its trustee, Sheldon P. Sandler. The commissioners' award was made in June, 1966, and on June 17, 1966, the exceptions of the landowners DeGrace and the Highway Commission were filed. All other defendants named failed to file exceptions, two of the individuals named as defendants having filed a disclaimer, as well as another bank named as a mortgage holder, which claimed no lien.

On August 3, 1966, the Circuit Court of Clay County ordered distribution of ·the commissioners' award to Phillip and Betty DeGrace and Wherritt & Turpin, their attorneys. The distribution was made pursuant to a stipulation and disclaimer filed, but the stipulation shows that it was not signed by the Merchants-Produce Bank, nor was the Highway Commission named in or served with the document. The Highway Commission claims they had no notice of the distribution. In the thirteen years or so since the distribution, the case has languished upon the dockets of the circuit courts of Clay and Caldwell County where it was transferred on change of venue December 29, 1971. Various continuances and trial settings have been made. Attorneys for both the landowners and the Highway Commission have come and gone. The record of all these events is so prolix it is set forth in an appendix to this opinion. Prior to the setting of February 22, 1977, which resulted in the dismissals appealed from, the proceedings may be summarized in the following fashion.

There were five continuances by agreement. There was one continuance by reason of the defendants' application for change of venue. The case was continued twice by the court on its own motion. The plaintiff Highway Commission had filed six motions for trial setting. The defendants DeGrace never sought a trial setting individually and the record does not reflect a setting continued at the request of the Highway Commission over the objection of the defendants.

On February 22, 1977, the Circuit Court of Caldwell County took up the case. The defendants DeGrace were the only remaining defendants, the Merchants-Produce Bank and the trustee having been earlier dismissed from the case. Defendants DeGrace filed a motion to dismiss the Highway Commission's exceptions on the ground that they had failed to prosecute the action. This was overruled, and evidence was taken by the court without a jury on the merits of the damage issue.

The case was taken under advisement by the court and, on November 18, 1977, the case was reopened by the court. The court on its own motion directed that all exceptions in the case were dismissed for want of prosecution. The action by the trial court was apparently precipitated by suggestions of defendants DeGrace that ·the exceptions be dismissed based on the case of *State ex rel. State Highway Commission v. Manley*, 549 S.W.2d 533 (Mo.App.1977). The Highway Commission sought a rehearing and then appealed both dismissals.

The trial court's entry of an order dismissing the exceptions in this case for failure to prosecute is a discretionary ruling by the trial court. The review of the trial court's action must be to determine whether or not there has been an abuse of discretion. Judicial discretion and the correlative term, abuse of discretion, have been defined in *Harriman v. Harriman*, 281 S.W.2d 566, 571 (Mo.App.1955):

"A joint definition of the terms 'judicial discretion' and 'abuse of judicial discretion' which has been almost universally adopted by the courts in this country is to be found in Bowers' 'Judicial Discretion of Trial Courts,' section 12, page 20, as follows:

'The accepted understanding of the term does not necessarily, or very fre-

quently, mean that any aspersions whatever are cast upon the trial court. Defining the two terms together, it may be said that judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which can not be demanded as an absolute right of the party asking it to be done; and that an abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances. . . .' "

■ The trial court filed an opinion indicating the basis for the trial court's ruling. That opinion demonstrates that the trial court placed heavy emphasis upon the fact that, in the view of the trial court, the landowners had suffered prejudice by the long delay occurring in this case. It is also apparent that the trial court relied upon *Manley, supra,* in determining the issue presented. Several cases have enunciated the rule governing a trial court in exercising judicial discretion with respect to motion to dismiss for failure to prosecute. *State ex rel. State Highway Commission v. Graeler,* 495 S.W.2d 741 (Mo.App.1973), contains the rule and a statement of the underlying principles:

"Rule 67.02 and Sec. 510.140, RSMo 1969, V.A.M.S., state: 'For failure of the plaintiff to prosecute or to comply with these rules (this code) or any order of court, a defendant may move for dismissal of an action or of any claim against him . . .'

■ We recognize the general principles. 'The general rule is that courts have the inherent power, in the exercise of a sound judicial discretion, to dismiss a case for failure to prosecute with due diligence, and that the action thereon will not be disturbed on appeal unless such discretion was abused.' *City of Jefferson v. Capital City Oil Co.,* 286 S.W.2d 65, 68 (Mo.App.1956); *Euge v. Lemay Bank & Trust Co.,* 386 S.W.2d 398 (Mo.1965); *Esslinger v. Roach,* 463 S.W.2d 861 (Mo.

1971). The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in these days of crowded calendars. The power to dismiss is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law. *Link v. Wabash R. Co.,* 370 U.S. 626, 629–630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)." *Graeler, supra* at 743.

The case cited by the *Graeler* court, *City of Jefferson,* and the *Manley* case, *supra,* all proceed upon a review of the totality of the record concerning the delays in the case in reviewing the discretionary ruling.

■ Thus, these cases require the application of a judicial scrutiny to the particular facts in each case to determine whether or not the party against whom a motion is filed has failed to pursue the remedy the law affords with reasonable diligence. Each such case must rest upon its own facts and a balancing by the trial court and this court of the prejudicial effect of delay against the efforts of the parties to reach a resolution of the issues in the case. Thus, while *Manley, supra,* did reverse the trial court denial of a motion to dismiss the state's exceptions upon the basis of a lack of diligence by the state, that holding was premised upon a much clearer showing of delay on the part of the state and no acquiescence or participation by the landowner in continuing the case. In the instant case, the record summarized in this opinion and demonstrated more fully in the attached appendix does not demonstrate a lack of diligence on the part of the State Highway Commission sufficient to justify dismissal of the state's exceptions. There is simply no factual basis here that makes the ruling in *Manley, supra,* controlling. It is probably correct that the long delay has affected the landowners' capabilities in presenting their case, but this record demonstrates that the landowners have been as responsible for the delay as the State Highway Commission. In the circumstances of this case, it was an abuse of discretion for the

trial court to, on its own motion, dismiss the exceptions of the parties.

The second branch of this appeal requiring disposition is the State Highway Commission's appeal from the trial court's order dismissing Merchants-Produce Bank from the litigation. The motion was sustained August 18, 1976.[1] So far as the record reflects, Merchants-Produce Bank had not taken any active part in the litigation, its answer and the motion being the only pleadings or activity evidenced by the record on behalf of the bank. The trial court assigned no reason for its ruling on the motion. The motion of the Bank and the suggestions filed indicate that the parties presented the matter on two principal grounds.

The first ground urged was a failure of the State Highway Commission to proceed with diligence and a request for a dismissal for failure to prosecute. The second ground advanced was the assertion of the bank that § 523.053 RSMo 1978 was a bar to any further proceedings against the bank on the theory that the state had not intervened at the time of distribution to the DeGraces and that, therefore, they had waived any right to contribution in the event of a reduction in the commissioners' award from other parties to the case. The necessary predicate to the argument of Merchants-Produce Bank is that the distribution was pursuant to the statute.

The first ground presented for the sustaining of the bank's motion to dismiss stands upon the same footing as the motion of the defendants DeGrace previously discussed. All of the reasons assigned with respect to the motion of the defendants DeGrace apply with equal force to any contention by the bank that the state has failed to prosecute its action. Thus, the motion to dismiss sustained by the trial court cannot be upheld upon the theory that the State

Highway Commission has failed to prosecute against Merchants-Produce Bank. This is particularly true with respect to the bank since throughout the years the litigation pended, the bank made absolutely no effort to have the issues resolved. The bank argues it did not consent to or have knowledge of the continuances. This could only be true if the Bank and its counsel failed to appear; it cannot be considered as opposition and must be considered as acquiescence.

The second ground presented to the trial court for dismissal, the effect of § 523.053 RSMo 1978, has been briefed and argued by the parties on the basis of the decisions in *State ex rel. State Highway Commission v. Eilers*, 445 S.W.2d 374 (Mo.1969); *State ex rel. State Highway Commission v. Thelnor, Inc.*, 485 S.W.2d 443 (Mo.App.1972); and *State ex rel. State Highway Commission v. Thelnor, Inc.*, 543 S.W.2d 229 (Mo.App. 1976).

On September 11, 1979, the Supreme Court handed down its decision in *State of Missouri ex rel. State Highway Commission of Missouri v. Morganstein*, 588 S.W.2d 472 (Mo. banc 1979).[2] In that decision, the Supreme Court discussed the *Thelnor* and *Eiler* cases, and its decision and discussion of those cases is binding upon this court.

In *Myers*, a judgment of a much lesser amount than the condemnation commissioners' award was entered without a determination of the several liability of those persons to whom it was paid. The Supreme Court affirmed the amount of the judgment and remanded for an evidentiary hearing on the issue of the several liability of the parties.

Without attempt at paraphrase, the discussion of *Eilers* and the *Thelnor* cases set forth in *Myers, supra,* is here set forth:

"In *Eilers*, as here, the trial court entered an *in personam* judgment requiring

---

1. A notice of appeal was filed at the time and dismissed by this court on the ground that the dismissal of one defendant was not a final judgment. The subsequent notice of appeal was attacked by the Bank as not timely. This court gave leave to file out of time, and both orders

of dismissal are now before this court for determination.

2. The court was considering the exceptions of *Myers*, and the case will be referred to herein as "*Myers*."

that defendants repay condemnor the amount by which the jury had reduced the commissioners' award. The court made no apportionment of several liability. However, as pointed out at 445 S.W.2d at 376, there was 'no finding or recital in the judgment that this money or any portion of it was ever disbursed by the Circuit Clerk, nor [was] there any separate order or entry in the transcript which so indicates.' Thus it was held that the action continued to be one *in rem* and the trial court's *in personam* judgment against the defendants was void. The Court discussed apportionment under § 523.053 as an appropriate procedure on remand, not as the *ratio decidendi* for its order.

Appellant also refers to *State ex rel. State Highway Commission v. Thelnor, Inc.*, 485 S.W.2d 443 (Mo.App.1972), *appeal after remand*, 543 S.W.2d 229 (Mo. App.1976). There the owner of property encumbered by a deed of trust obtained a court order releasing the commissioners' award to him alone and the money was so paid. 543 S.W.2d at 230. As the appellate court noted, this procedure represented an ' "irregularity" under the law in effect on February 5, 1965,' the date of the court's order. After the jury awarded a lesser amount, the trial court entered a joint and several judgment against the owner and the holder of the deed of trust for the amount to be returned to the Commission. In the first appeal, the Appellate Court reversed and remanded because no separate apportionment of the amount to be returned had been determined by the trial court. 485 S.W.2d at 446. The Court of Appeals apparently relied on § 523.053, but that statute was not in effect at the time of the trial court's judgment and could not therefore have produced reversal. The opinion also cites *Eilers*,[3] but the *Eilers*

[3] Section 523.053 was enacted and became effective late in 1965. Laws 1965, pp. 660–661.

ruling was based not on the lack of apportionment; instead as discussed above the appellate court reversed the trial

court's judgment because the order constituted an *in personam* judgment when the record disclosed the action was one *in rem*.

Thus while neither *Eilers* nor *Thelnor* provide authority for ruling that the judgment of the trial court in the case at bar was void, we believe remand is necessary to determine the individual liability of the separate defendants for the excess award, and this is so whether or not § 523.053 controls.[4] The obligation to

[4] It can be argued that § 523.053 *does not provide the exclusive means of withdrawing commissioners' awards* from the registry of court, for the statutory language states a defendant 'may' file a motion for distribution pursuant to its provisions. On the other hand, defendants did not file a motion for distribution under § 523.053, which would seem to be the prerequisite for their invoking subsection 3 on apportionment of liability for restitution. However, in view of our disposition of the case, we need not pass on the applicability of *§ 523.053 to the facts before us.*" (*Emphasis supplied.*)

repay the Commission all amounts obtained above the jury award springs from basic principles of equity and fairness which dictate that defendants simply have no right to more than the jury found was due for the property taken. The situation resembles that in which an already-satisfied judgment is reversed on appeal. The successful appellant has the right to restitution of money lost by reason of the erroneous or void judgment. *DeMayo v. Lyons*, 360 Mo. 512, 228 S.W.2d 691, 692 (1950). 'The proceeding, after the reversal of the judgment, to make restitution, whether by separate suit or motion in the case, is governed by broad equitable considerations. It is a question *ex aequo et bono*, as in suits for money or property had and received.' *Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis Co.*, 291 Mo. 54, 236 S.W. 58, 62 (1921). Of course, equity in such cases holds a defendant liable to repay only that which he may have received of the proceeds, whether directly or beneficially. *White v. McCoy Land Co.*, 101 S.W.2d 763, 765 (Mo.App.1936), *aff'd. sub nom. White v. Scaritt*, 341 Mo.

1004, 111 S.W.2d 18 (1937). *See also* 58 C.J.S. *Money Received* § 23 (1948). But when, as in the case *sub judice*, the commissioners' award has been paid to joint parties, it is the burden of each to prove the lesser amount for which he may be liable. . The condemnor has no responsibility for the apportionment of a damage award, *State ex rel. State Highway Commission v. Conrad,* 310 S.W.2d 871, 877 (Mo.1958), nor is it required to trace the distribution of the proceeds to the parties. Application of these principles requires vacation of the trial court's judgment with directions that it enter an order allowing appellant to move within such reasonable time as the court may direct for a determination of the liability of each of the joint parties or their estates (except the Estate of Ardeis Myers, Sr.) for repayment of the excess of the commissioners' award. *Myers, supra* at 476–477.

Thus, *Myers* holds that where there is no proceeding under § 523.053 RSMo 1978, there must be a determination of the several liability of the parties, and this is so even if because of the failure of timely substitution of an executor the plaintiff may lose a portion of the recovery. The Supreme Court did not decide whether § 523.053 RSMo was the exclusive means of withdrawal of funds, saying that remand was necessary whether or not the statute controls.

■ In the instant case, the position of Merchants-Produce Bank is that the statute is exclusive and controls. The argument that the statute controls cannot be accepted in this case. The proceeding by which disbursement was made simply does not satisfy the statute. If it was intended as an agreement under § 523.053 RSMo 1978, it was clearly defective as not including the Merchants-Produce Bank and, further, because *no "prior notice"* to the State Highway Commission was given. While it might not be appropriate to deny the Merchants-Produce Bank of the benefit of the statute because they were not parties, it is equally inappropriate to apply the statute to foreclose the State Highway Commission from relief against the Merchants-Produce Bank when the Commission had no notice or opportunity to object. The same defects are apparent if the awkward pleading is construed as a motion to determine interests.

The statute, § 523.053, can thus not *control* on the issue of the dismissal of Merchants-Produce Bank as a party and the action of the trial court was in error and must be reversed.

■ On the issue of exclusive remedy, it may be said that certainly no circuit court should order disbursement without compliance with the statute. The "may" language of the statute must almost certainly be construed as referring to the option to withdraw and not the method by which withdrawal is accomplished. Strict adherence to the statutory procedures will eliminate the problems of *Myers, supra,* and this case as to recovery of moneys and ultimate division of proceeds.

■ Since the statute does not apply to the case in view of the prior disbursement, what was said in *Myers* controls. The principal announced in *Myers* that the successful appellant Highway Commission has an equitable right to recover an excess from those who received the award must have as its corollary the principle that no party should be liable in restitution for more than the amount received.

The instant case presents a set of facts which call for the application of the corollary principle. In *Myers,* there was distribution to all defendants without proration. In the instant case, there was payment to only two defendants. There is, however, a clear implication that Merchants-Produce Bank received the amount due on the mortgage. As the principle is stated in *Myers, supra,* "equity in such cases holds a defendant liable to repay only that which he may have received from the proceeds, whether *directly or beneficially.*" Thus, if the statute does not control and the proceeding is in equity, the beneficial interest of Merchants-Produce Bank, if any, should be determined, permitting the State Highway Commission

to recover as the interest of the parties appears.[3] The motion to dismiss of the Merchants-Produce Bank was improperly sustained and the ruling of the trial court on that motion is reversed.

The *Myers* opinion likewise provides guidance on the procedure to be followed:

"When a condemnation award has been distributed before exceptions are tried, but the defendants have not utilized the procedure allowed in § 523.053, it would seem better practice for the court to determine in advance the percentage of any increase or decrease each defendant might have in the outcome." *Supra* at 480.

The cause is, therefore, remanded to the trial court for a preliminary hearing on the issue of the several liability of defendants in the increase or decrease in the commissioners' award. In that connection, the trial court's attention is directed to the last proviso of § 523.053(3) and the provisions of the covenant concerning the proceeds referred to in footnote number three herein.

Subsequent to that determination, the court shall promptly submit to a jury for its determination of the exceptions filed by both the Highway Commission and the defendants DeGrace. This court is aware that no appeal from the order dismissing the DeGrace exceptions has been filed, but pursuant to the decisions in *Albers Milling Company v. Carney*, 371 S.W.2d 355 (Mo. App.1963) and *Hardwick v. Kansas City Gas Co.*, 355 Mo. 100, 195 S.W.2d 504 (1946), which establish the principle permitting such remand when the interests of justice so require, the entire cause is remanded.

All concur.

## APPENDIX

Summary Docket Entries, *State ex rel. Highway Commission v. DeGrace, et al.*, No. KCD30031.

*February 24, 1966,* plaintiff filed condemnation petition in the Circuit Court of Clay County.

*April 18, 1966,* defendants, Merchants-Produce Bank and Sheldon P. Sandler, Trustee, filed an answer to plaintiff's petition.

*June 10, 1966,* the Commissioners filed their Award in the amount of $75,692.00.

*June 17, 1966,* the plaintiff filed exceptions to the Commissioners' Award.

*June 17, 1966,* the defendants, Phillip DeGrace and Betty DeGrace, filed exceptions.

*June, 1966,* a Disclaimer of Interest in the Commissioners' Award was filed in this case by Phillip and Betty DeGrace praying that the entire Award be distributed to *Phillip* and Betty DeGrace.

*August 3, 1966,* the Clay County Court ordered distribution of the entire Commissioners' Award to Phillip DeGrace and Betty DeGrace, and Wherritt and Turpin, their attorneys.

*October 16, 1967,* by agreement of the parties, the Court ordered the cause continued.

*January 22, 1968,* the Court ordered the cause transferred to the inactive docket.

*October 28, 1969* attorneys for plaintiff and defendants filed a Mutual Application of Counsel to Reinstate Case to Active Docket.

*November 17, 1969,* upon application of plaintiff, ordered that the cause be continued on the inactive docket.

*May 19, 1971,* plaintiff filed a Motion to Reinstate Case to Active Docket.

*November 15, 1971,* the cause was set for trial on Monday, January 17, 1972.

*December 21, 1971,* Morris, Foust and Beckett entered appearance for defendant Phillip DeGrace.

*December 28, 1971,* defendant Phillip DeGrace filed a petition for change of venue.

---

**3.** This opinion does not reach or decide the issue of priority between Merchants-Produce Bank and DeGraces by reason of the covenant that condemnation proceeds should be applied to the note.

December 29, 1971, a change of venue to Caldwell County ordered.

January 31, 1972, plaintiff filed its Motion for Trial Setting.

February 7, 1972, the defendants failed to appear, plaintiff appeared by attorney and the cause was set for trial on Thursday, May 18, 1972.

May 2, 1972, the trial setting of May 18, 1972 was set aside and the cause was continued by agreement of the parties.

November 21, 1973, the Clerk of Caldwell County indicated that the cause would be dismissed for lack of prosecution unless some action was taken by January 7, 1974.

December 5, 1973, plaintiff filed its Motion for Trial Setting.

January 7, 1974, the cause was set for trial on March 28, 1974.

March 21, 1974, the trial setting of March 28, 1974 was set aside by agreement of the parties, cause was continued to June 17, 1974 for trial setting. The Court did not set the case for trial on June 17, 1974.

September 15, 1975, plaintiff filed its Motion for Trial Setting.

September 23, 1975, Morris, Foust, Beckett and Ponick filed its Motion to Withdraw as counsel for Phillip DeGrace.

October 6, 1975, Motion to Withdraw sustained; trial set for January 26, 1976. The trial setting of January 26, 1976 was continued by the Court on its own motion.

October 14, 1975, interrogatories were sent by plaintiff to Phillip, Betty, and Rosalie DeGrace.

October 16, 1975, the law firm of Wherritt and Turpin filed its Motion for Withdrawal of Counsel.

November 17, 1975, Motion for Withdrawal Sustained.

December 19, 1975, plaintiff filed a Motion to Add Parties.

January 5, 1976, Special Appearance and Reply by Betty DeGrace to oppose Motion to Add Parties. This was taken under advisement by the Court.

February 6, 1976, Plaintiff's Motion to Add Parties sustained.

May 19, 1976, Plaintiff's Motion to Compel Inspection of Documents sustained.

May 26, 1976, James Whan withdraws as counsel for Wherritt and Turpin.

June 10, 1976, Motion by Wherritt and Turpin for Court to Reconsider the Order Sustaining Plaintiff's Motion to Compel Request to Inspect Documents.

June 21, 1976, Wherritt and Turpin Motion Sustained and May 19th order set aside.

June 30, 1976, plaintiff filed its Motion for Trial Setting.

July 12, 1976, the Court set the cause for trial on August 2, 1976. The Court, on its own motion, set aside the trial setting of August 2, 1976. The plaintiff announced that it was ready for trial an August 2, 1976.

July 19, 1976, defendants Sheldon P. Sandler and the Merchants-Produce Bank filed their Motion to Dismiss.

August 18, 1976, Motion to Dismiss was sustained by the Court.

August 27, 1976, Plaintiff's Motion for Rehearing on Dismissal.

September 13, 1976, Motion for Rehearing Overruled. Appealed to Court of Appeals-Kansas City.

October 4, 1976, Appeal dismissed.

December 17, 1976, plaintiff filed its Motion for Trial Setting.

January 3, 1977, the cause was set for trial for February 22, 1977.

## ON MOTION FOR REHEARING

PER CURIAM:

On motion for rehearing, the Merchants-Produce Bank and Sheldon P. Sandler, Trustee, assert that the opinion in this case is in error in overlooking and misinterpreting the facts by holding that defendant Merchants-Produce Bank and Sheldon P. Sandler, Trustee, acquiesced in the continuances of the case.

They point to an affidavit filed by the trustee which asserted that he had no knowledge of the continuances, never consented to a continuance, and was never present in court on the case except on August 2, 1976. In the suggestions in support of the motion, this argument is buttressed by asserting that the transcript shows an admission by the Highway Commission both as to the question of notification and question of consent. The only admission contained in the cited portion of the transcript was that neither the bank nor the trustee had ever sought a continuance.

However, the more important fact is that this case was pending in Clay County and, subsequent to the change of venue, in Caldwell County during the period of time when § 478.205 RSMo 1969, now repealed effective January 2, 1979, 478.225 RSMo 1969, 478.213 RSMo 1959, and 478.315 RSMo 1969, all now repealed effective January 2, 1979, were in effect. These statutes provide for the time for holding courts in those counties, traditionally known and accepted by the lawyers of this state as the "first day of the term," at which time dockets are published or called and case settings arranged.

The record discloses that at least some of the protracted proceedings in this case occurred at the "next regular civil docket call" in the Caldwell County Circuit Court. Significantly, neither the Bank nor the Trustee assert that they had no notice of the pendency of the case on the docket.

■ A party to litigation has a duty to keep abreast of all proceedings in a case after service of process until final judgment. *Cohen v. Ennis*, 318 S.W.2d 310 (Mo. banc 1958); *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611 (Mo.1964). *Cohen* stated the rule as follows:

> " ' "A party over whom a court has obtained jurisdiction must take notice of all proceedings until final judgment is rendered, but after judgment he is not regarded as being before the court, and should have notice of any subsequent proceedings which affect his rights." ' " 318 S.W.2d at 316

It can only be said in this state of the record that the Merchants Produce Bank and Sheldon P. Sandler acquiesced in whatever was occurring in the case by utterly failing to pay any attention to the case until 1976.

The motions for rehearing and for transfer are denied.