**STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff–Appellant,**

v.

**Francis M. WILSON II, et al., Exceptions of Myers Oil Company, Defendant,**

**Farley State Bank, Defendant–Respondent.**

No. WD 46619.

Missouri Court of Appeals, Western District.

May 11, 1993.

As Modified June 29, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

Application for Transfer Sustained Aug. 17, 1993.

Case Retransferred Nov. 23, 1993.

Court of Appeals Opinion Readopted Dec. 2, 1993.

James M. Slone, Kansas City, Rich Tiemeyer, Jefferson City, for plaintiff-appellant.

Abe Shafer, Weston, Bruce E. Strauss, Merrick, Baker, Fox, Hufft & Strauss, Kansas City, for defendant-respondent.

Before LOWENSTEIN, C.J., and TURNAGE and BRECKENRIDGE, JJ.

TURNAGE, Judge.

The Missouri Highway and Transportation Commission filed a suit in condemnation to acquire land owned by Myers Oil Company upon which Farley State Bank held a deed of trust to secure a note payable to the Bank. On trial of the exceptions filed by both Myers Oil and the Commission, the court found the value of the property to be less than the commissioners' award. The Commission sought to have the court enter judgment against the Bank for a part of the deficiency but the court refused. On appeal, the Commission contends that under equitable principles it has a right to seek restitution from the Bank for money which the Bank received from the commissioners' award after it was paid into court. Affirmed in part, reversed in part and remanded.

The Commission filed its petition in condemnation in October of 1985 and named as defendants Myers Oil Company, Osage Outdoor Advertising, Inc., and Farley State Bank. It was alleged that Myers Oil Company was the owner of the property and that Farley State Bank held a deed of trust on the property. Farley State Bank filed an answer stating that it was the owner of a note secured by a deed of trust covering the land sought to be condemned and that the Bank's lien was prior to and superior to any

other right of ownership in the land sought to be condemned.

The court appointed commissioners who later filed their report assessing damages at $293,000. Both Myers Oil Company and the Commission filed exceptions. Thereafter, the Commission paid the $293,000 into court.

Shortly after the $293,000 was paid into court, the president of Farley State Bank, who was also the attorney of record for Myers Oil Company, filed a disclaimer on behalf of the Bank in the commissioners' award. At the same time the attorney filed an application on behalf of Myers Oil to withdraw the sum of $276,700.[1] Pursuant to the stipulation of Osage, Myers and the Bank, the court ordered that $276,700 be paid to Myers. Thereupon, Myers was paid $276,700.

On the day following the order to pay $276,700 to Myers, Farley State Bank executed a quit-claim deed to Myers Oil by which the deed of trust held by the Bank on the property being condemned was released.

Almost six years later the Commission took the deposition of Alvin Davis, a statutory trustee of Myers Oil. Davis testified that the corporate charter of Myers Oil Company had been forfeited and the company was no longer in existence. He stated that of the $276,700 paid to Myers Oil from the commissioners' award, approximately $200,000 had been paid to Farley State Bank.

Trial of the exceptions to the commissioners' award was set in August of 1991, and as soon as the trial setting was obtained the Commission gave notice to Farley State Bank that if the final award was less than the commissioners' award that the Commission would look to the Bank to contribute toward payment of the deficiency.

Trial on the exceptions was continued from August 1991 to March 1992, but in August of 1991, the Commission forwarded interrogatories to Farley State Bank seeking information as to the amount paid to the Bank from the commissioners' award withdrawn by Myers. The Bank filed what it termed to be a special appearance and sought a protective order to relieve it from complying with the discovery request. In November of 1991, the court granted the Bank a protective order. In its order the court stated that by reason of the order of apportionment dividing the condemnation award between Osage and Myers and the issuance of a separate check by the clerk of the court to Myers for its share, Farley State Bank was effectively eliminated from the case and was therefore not required to respond to the interrogatories.

On March 2, 1992, trial on the exceptions was held to the court and the court found that the value of the property being taken was $127,500. The Commission tendered a proposed judgment entry to the court finding the value of the property to be $127,500 and ordering a refund to the Commission of $149,200. The Commission further suggested that Farley State Bank and Myers Oil be required to submit evidence as to the amount which each had received from the $276,700 paid into court by the Commission.

The court entered a judgment finding the value of the property to be $127,500 and found that Farley State Bank had previously been eliminated from the case by the protective order. The court entered judgment in favor of the Commission against Myers Oil for the deficiency of $149,200 plus interest. The Commission filed a motion to amend the judgment to include a judgment against Farley State Bank for the amount which it received from the amount paid to Myers Oil from the commissioners' award. Attached to that motion was a copy of the deposition of Davis reflecting his testimony that Farley State Bank had received $200,000. The court took no action on the motion to amend and by operation of law it was denied.

The Commission contends it was error for the court to refuse to enter judgment against Farley State Bank for a proportionate share of the amount which it received from Myers Oil from the commissioners' award. The

---

1. All parties filed a stipulation that Osage Outdoor Advertising would receive $16,300.00 from the commissioners' award as payment for a sign located on the property. The parties further stipulated that Osage would not be subject to any liability for repayment under any circumstance. For that reason Osage is not a party on this appeal.

Commission founds its claim on *State ex rel. State Highway Comm'n v. Morganstein,* 588 S.W.2d 472, 477 (Mo. banc 1979), in which the court stated:

> [W]e believe remand is necessary to determine the individual liability of the separate defendants for the excess award, and this is so whether or not § 523.053 controls. The obligation to repay the Commission all amounts obtained above the jury award springs from basic principles of equity and fairness which dictate that defendants simply have no right to more than the jury found was due for the property taken. The situation resembles that in which an already-satisfied judgment is reversed on appeal. The successful appellant has the right to restitution of money lost by reason of the erroneous or void judgment. *De-Mayo v. Lyons,* 360 Mo. 512, 228 S.W.2d 691, 692 (1950). "The proceeding, after the reversal of the judgment, to make restitution, whether by separate suit or motion in the case, is governed by broad equitable considerations. It is a question *ex aequo et bono,* as in suits for money or property had and received." *Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis Co.,* 291 Mo. 54, 236 S.W. 58, 62 (1921). Of course, equity in such cases holds a defendant liable to repay only that which he may have received of the proceeds, whether directly or beneficially. *White v. McCoy Land Co.,* 101 S.W.2d 763, 765 (Mo.App.1936), *aff'd. sub nom. White v. Scarritt,* 341 Mo. 1004, 111 S.W.2d 18 (1937). (footnote omitted)

*Id.* at 476–77[2–5].

Farley State Bank contends that because an order of apportionment under § 523.053, RSMo 1986, was made and it filed a disclaimer of interest in the award that it was eliminated from the case and the court lost jurisdiction of it.

■ The thrust of the *Morganstein* holding is that the Commission has the right to obtain restitution for any excess amount finally awarded over the commissioners'

award and this right is rooted in principles of equity and fairness and this is so whether or not § 523.053 had been followed.[2] In this case there were three parties who had an interest of the award—Myers Oil, Farley State Bank and Osage. All parties including the Commission agreed as to the interest of Osage. Farley State Bank filed a disclaimer of any interest in the award and the court ordered that the award be paid to Osage and Myers Oil in the amounts stipulated by those parties. Farley State Bank now says that by filing the disclaimer it removed itself from the court's jurisdiction. If Farley State Bank could escape all responsibility to repay any amount of the commissioners' award which it received by the simple expedient of filing a disclaimer, the right of the Commission to restitution would be defeated. The Commission's right to restitution is founded on equity and fairness and the right thus anchored cannot be thwarted by the unilateral act of the Bank in filing a disclaimer and thereafter receiving its money. Further, the Bank was placed on notice by the Commission after the disclaimer was filed that the Commission would look to the Bank for payment of any deficiency if the final award was less than the amount paid into court. The Bank thus had an opportunity to protect its interest by participating in the trial of exceptions but failed to do so.

■ In *State ex rel. State Highway Comm'n v. Gould,* 592 S.W.2d 172 (Mo.App. 1979), this court held that even though a bank which had been named a party in the condemnation had been dismissed, the court had a duty under the rationale of *Morganstein* to determine the bank's liability when there was a clear implication that the bank had received the amount due on its deed of trust. In this case, there is not only an implication that the Bank received its money from the fact that it released its deed of trust the day after Myers received the award, there is direct evidence of that fact from the deposition of Davis. *Gould* is authority for

---

**2.** Section 523.053 provides a method by which the court may determine the percentage of a condemnation award to which each of several parties is entitled. This percentage is applied to

any additional compensation awarded as well as to any reduction which occurs after the trial of exceptions.

holding the court did not lose jurisdiction of the bank when it filed its disclaimer.

Application of principles of equity and fairness make it clear that the court retained jurisdiction of the Bank after the disclaimer was filed and under all of the facts the court may conduct a hearing to determine how much of the award was received by the Bank and the amount it should be required to pay to the Commission.

■ Farley State Bank contends that it had been "eliminated" from the case by the entry of the protective order and for that reason the court has no jurisdiction to determine whether or not it is responsible to repay any amount to the Commission. The protective order did not order Farley State Bank dismissed from the action. The Bank was named a party defendant and served with summons and to this date the court has not ordered the Bank dismissed. Except for a voluntary dismissal filed by a plaintiff prior to the introduction of evidence, all other dismissals require an order by the court. *First Nat'l Bank of Colo. Springs v. Mark IV*, 591 S.W.2d 63, 68 (Mo.App.1979). Absent an order dismissing it, the Bank remains a party to the action.

■ The Bank further contends that condemnation proceedings are *in rem* but the Commission seeks to recover an *in personam* judgment against it. In *State ex rel. State Highway Comm'n v. Eilers*, 445 S.W.2d 374, 376[3] (Mo.1969), the court held that a condemnation proceeding is converted to one *in personam* after a party filed a motion requesting payment of the commissioners' award. The court further held that the request amounts to a general appearance for that purpose. In this case, the Bank entered a general appearance after the award was paid into court when it filed a disclaimer in the award. While the Bank did not explicitly request distribution of a part of the award to it, it implicitly did so. This for the reason that at the time the disclaimer was filed the only party who would receive the award was Myers Oil who was indebted to the Bank. At the time of filing the disclaimer the Bank's lien had not been released. By releasing its deed of trust the day after executing its disclaimer it is appar-

ent the Bank knew at the time it filed its disclaimer that it would receive its money from the award that was paid into court. There could be no other reason for the Bank to file a disclaimer. In addition, the deposition of Davis indicates the Bank was paid from the award and it may be inferred that the Bank knew it would be paid from the award at the time it filed its disclaimer. The Bank knew that when it filed a disclaimer that the award, less the amount paid to Osage, would be paid to Myers and further knew that when the award was paid to Myers that the Bank would receive its money from Myers. The effect of filing the disclaimer was to assure that the $276,700 would be paid to Myers and that Myers would in turn pay the Bank. The effect of the disclaimer was therefore to request that part of the award be paid to the Bank. For that reason, the Bank entered a general appearance through the filing of the disclaimer after the award had been paid into court. Under *Eilers* the court had *personam* jurisdiction of the Bank after it filed its general appearance in the form of a disclaimer under the facts here.

■ The Bank further contends that the court lost jurisdiction over it because a new case began when the exceptions were filed and the original condemnation case ceased to exist when the circuit clerk assigned a new case number. In *State ex rel. Highway Comm'n v. Curtis*, 365 Mo. 447, 283 S.W.2d 458, 466[11–13] (1955), the court stated that after exceptions are filed the question of damages is all that is left in the case. The court also stated that the exceptions of each landowner in the case are tried separately and the trial of one landowner's exception does not affect any other owner. The filing of exceptions does not result in a new case but simply continues the condemnation case as to the owner involved to resolve the question of damages. However, even if it could be said that a new case began with the filing of exceptions, in this case it is held that the Bank entered its general appearance after the award was paid into court and that gave the court *personam* jurisdiction of the Bank.

The court had jurisdiction over the Bank. As in *Gould*, there is a clear implication that Farley State Bank received payment on its note from the award. The court had jurisdiction to conduct an equitable proceeding to determine what part of the commissioners' award, if any, the Bank received and to fix the amount which the Bank should pay the Commission.

The judgment fixing the value of the property at $127,500 is affirmed. The remainder of the judgment is reversed and this cause is remanded with directions to allow the Commission to file appropriate pleadings to assert its claim against Farley State Bank for equitable restitution, to allow Farley State Bank to file its pleadings, and thereafter to adjudicate the Commission's claim and enter judgment thereon. Costs are assessed against Farley State Bank.

All concur.