HURST AUTOMATIC SWITCH & SIGNAL COMPANY and FRED HURST, Appellants, v. TRUST COMPANY OF ST. LOUIS COUNTY, STONEWALL J. WALTON, REBECCA WALTON, GEORGE A. BODE and F. J. HOLLOCHER.

Division One, December 19, 1921.

1. **APPEAL: Final Judgment: Accounting.** Where the Supreme Court had adjudged on a former appeal that a deed of trust had been wrongfully foreclosed, that the holder of the notes and the purchaser had entered into a conspiracy to suppress bidding, and re-

manded the case with directions to set aside the trustee's sale and his deed to said purchaser, to take an accounting between the parties and to grant to the mortgagor a reasonable time in which to redeem the property upon a payment by him of the sum found to be justly due, and upon a return of the case the mortgagor filed therein a petition or statement for an accounting, for rents, damages, waste, etc., a decree adjudging that he take nothing under his petition for an accounting against the holder of the note and the trustee, and that he is entitled to no accounting at all against the defendant purchaser unless and until he redeems the property by paying the amount found due the mortgagee, was a final decree, from which an appeal lies. Although conditional, it was a final decree that plaintiff was entitled to no accounting against the defendant purchaser until he made redemption of the property, which he might never do, and which was a condition not imposed by the directions of the Supreme Court.

2. ———: ———: Reversal: Subsequent Orders. Where a judgment in an equity suit has been reversed and the cause remanded to take an accounting, the judgment of the appellate court was a final judgment, and all orders thereafter made in the case by the trial court are "orders after the final judgment in the cause" within the meaning of the statute (Sec. 2038, R. S. 1919), from which appeals lie.

3. REVERSAL OF JUDGMENT: With Directions: Subsequent Conditions. Where in a suit by the mortgagor to set aside a trustee's sale under a deed of trust and his deed, the Supreme Court has reversed a judgment denying such relief, and has remanded the cause with directions to set aside said trustee's sale and the trustee's deed to the purchaser, to take an accounting between the parties, and to grant a reasonable time for the redemption of the property upon payment by plaintiff of the sum justly found due for that purpose, the trial court erred in first requiring the plaintiff to pay the amount due the mortgagee on the secured notes and to redeem before setting aside and canceling the trustee's deed and sale.

4. DEED OF TRUST: Wrongful Foreclosure: Restitution: Accounting: Things Included. Where the Supreme Court has adjudged that a deed of trust was wrongfully foreclosed, and has ruled that the mortgagor "should be restored to all things lost by reason of the judgment" of the circuit court upholding said foreclosure, and has reversed said judgment and remanded the cause with directions to set aside the trustee's sale and deed, to take an accounting between the parties, and to grant a reasonable time for the redemption of the property upon the payment by the mortgagor of

a just sum for that purpose, the mortgagor is entitled to be restored to all things lost by him, by reason of the reversed judgment, to any of the defendants or to third parties not innocent purchasers from them, including (a) the restoration of the property of whose possession he was deprived pending the litigation, and to an accounting (b) for rental value; (c) waste and damage done to the property, including crops damaged or converted during the litigation; (d) all taxable costs and expenses of the appeal which he paid; (e) the amount paid to satisfy the judgment and costs of an unlawful detainer suit brought by the purchaser at the unlawful foreclosure suit, in which the purchaser obtained judgment and possession, whether paid by the mortgagor, his tenant or the bondsmen (for the benefit of the sureties, however, if paid by them); (f) the direct expense of moving away from and back to the property by reason of his eviction; and (g) to retain possession for a reasonable time in which to redeem the property from the deed of trust. But the mortgagor is not entitled to recover the money paid to his attorneys or other expense in and about the litigation which are not taxable as costs under the statute, nor can he recover speculative damages, such as the extra expense of living or doing business by being evicted from possession of the property.

5. ———: ———: ———: ———: **Where Brought: Full Relief.** Where the court has adjudged that a deed of trust given by plaintiff was wrongfully foreclosed and directed that he be restored to all things lost thereby, his restitution may be obtained by motion in the case, and no separate or new suit need be filed therefor, but full relief, including an accounting for all items of loss caused by any of the defendants or their privies, may be had therein, by motion and due notice.

6. ———: ———: ———: ———: **Liability of Mortgagee: Co-Conspirator.** If the holder of the mortgage notes purchases at the unlawful foreclosure sale under the deed of trust and thereafter is in possession he is, in an accounting, chargeable with rents, while so in possession, if allowed interest on the notes; but if he did not purchase the property and has never been in possession, and has not committed waste, and has no interest in the title or possession claimed by the purchaser, he is not liable to account for rents or profits or waste, although he was a party, with the purchaser, to the conspiracy which brought about the wrongful and unlawful sale.

7. ———: ———: **Redemption: Interest Paid by Purchaser to Mortgagee.** Where the deed of trust was wrongfully foreclosed, and the purchaser obtained a part of the money with which to make the purchase by executing his note to the mortgagee and subse-

quently paid interest thereon, the mortgagor, on being adjudged restitution and the right to redeem the property from the deed of trust, is still required, in order to redeem, to pay the full amount of interest upon the mortgage notes; for the amount of interest paid by the purchaser to the mortgagee is a matter of accounting between them, in which the mortgagor is not legally interested.

8. ———: ———: ———: **Interest on Mortgage Notes After Wrongful Sale: Tender.** Where the foreclosure sale under the deed of trust is adjudged to have been wrongful and the trustee's deed is set aside, and an accounting is directed to be taken and the mortgagor is granted a reasonable time for the redemption of the property upon the payment of the sum found to be justly due for that purpose, the holder of the notes is entitled to interest after the wrongful sale to the date of the hearing in the accounting proceeding, unless the mortgagor on the date of the sale or within proper time thereafter made tender or offered to pay the notes and interest and the holder refused to receive payment.

9. ———: ———: ———: **Sheriff as Substituted Trustee.** Where the deed of trust named a trust company as trustee, and provided that in case of its refusal to act the then sheriff should make the foreclosure sale, and said trust company subsequently acquired the mortgage notes and when they became due notified the sheriff in writing that it refused to make the sale and requested him to make it, and he acted in good faith, and said sale was subsequently adjudged to be wrongful and to have been brought about by a conspiracy between the trust company and the purchaser, the mortgagor, in the subsequent accounting, is not entitled to an allowance against said sheriff for rents, waste or damages done by others, or for any other expense growing out of the litigation, eviction of the mortgagor or his restitution to possession.

10. ———: ———: ———: **Bringing in Other Parties.** The foreclosure sale and the trustee's deed having been adjudged invalid and set aside, and the mortgagor is granted the right to redeem and an accounting is directed to be taken, the mortgagor may, by filing a proper motion and giving due notice thereof, make any person a party to such accounting who purchased or was in possession of said property, or received the use and benefit or rents and profits thereof, or committed waste thereon, and who was not an innocent purchaser thereof, at any time after the mortgagor's original suit to have the sale adjudged invalid was instituted.

11. **EQUITY: Scope of Relief.** A court of equity, once in possession of the *res* and having jurisdiction of the parties, will not relinquish its hold until it has done complete and adequate justice to all parties.

Appeal from St. Louis Circuit Court.—*Hon. G. A. Wur-deman*, Judge.

REVERSED (*with directions*).

*W. W. Cohick* for appellants.

(1) The decree of this court provides that the trustee's sale and his deed thereunder, conveying plaintiff's property to defendant Walton, and said Walton's deed are null and void, and the mandate directs that plaintiffs be restored to all things lost by the judgment of the trial court. The trial court erroneously refused to enter judgment accordingly and erroneously refused on the accounting to enter judgment restoring plaintiffs to what they lost by the original judgment in the cause. Keltner v. Harris, 204 S. W. 561. By the judgment of the trial court plaintiffs lost possession of the land and lost the rents, issues and profits thereof, all of which the trial court erred in not restoring to plaintiffs in its judgment on the accounting. (2) The rights of plaintiffs to restitution of premises and to the value of rents, profits and damages fixed by the judgment of the trial court, are established by the judgment of reversal. The reversal completely nullifies the judgment and restores appellant to the status he occupied before it was rendered, and he is entitled to a restitution for what he has lost by the judgment. Colburn v. Yantis, 176 Mo. 670; Crispen v. Hannoven, 86 Mo. 160; Jones v. Hart, 60 Mo. 362; St. Joe Ry. Co. v. Brown, 43 Mo. 294; Carson v. Suggett, 34 Mo. 364; Chouteau v. Allen, 74 Mo. 56; Connor v. Pope, 23 Mo. App. 344; Tourvill v. Railroad, 148 Mo. 614. (3) Defendant was not an innocent purchaser. William Sheer, Walton's partner, who purchased the property in controversy from him, was a *lis pendens* purchaser. All defendants had notice of the pending of this cause in the trial and in this court, making them liable to plaintiffs under said opinion and mandate of this court. The trial

court erred in entering up the judgment it did on the accounting. Turner v. Edmonston, 210 Mo. 416; Mo. Ins. Co. v. Russ, 214 S. W. 860. (4) By the opinion and mandate of this court an accounting and the entry of a proper judgment thereon is directed. These directions were not followed by the learned trial court. Keltner v. Harris, 204 S. W. 561. (5) Defendant trust company refused to accept tender of amount due on the notes prior to foreclosure; therefore, it is not entitled to the interest which the judgment of the trial court gives it on the accounting. Potter v. Schaffer, 209 Mo. 586, 601; Miller v. Staggs, 266 Mo. 457. (6) Plaintiffs were entitled under the decree and mandate of this court to offer evidence at the trial on said statement of account tending to show value of rents, profits, waste and damages and have them adjudged in their favor on the accounting. Miller v. Staggs, 266 Mo. 457; Potter v. Schaffer, 209 Mo. 586. "He who takes with notice of an equity takes subject to that equity." Turner v. Edmonston, 210 Mo. 416; Life Insurance Co. v. Russ, 216 S. W. 860; Thompson v. Penny, 199 S. W. 1011; Woolum v. Tarpley, 196 S. W. 1127. "The court had the subject-matter of the suit within its grasp, had jurisdiction of that and likewise of the parties, and the doctrine is too well settled to admit of either discussion or dispute that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties." Real Estate Savings Inst. v. Colonious, 63 Mo. 295; Woolum v. Tarpley, 196 S. W. 1128; School District v. Holt, 226 Mo. 406, 415; Waddle v. Frazier, 245 Mo. 391, 403.

*Joseph C. McAtee* for respondent, Trust Company.

(1) This appeal was prematurely taken and allowed, for the reason that the judgment rendered was interlocutory and not final. Sec. 1521, R. S. 1919. (2) A judgment which does not dispose of all the parties to the cause is not a final judgment. Deck v. Wright, 135 Mo.

App. 536; Crowe v. Crowe, 124 Mo. App. 120. A final judgment must appear to be in favor of one party and against the other. It must purport to be the actual and absolute sentence of the law as distinguished from a mere finding that one of the parties is entitled to a judgment. Black on Judgments, sec. 3; State v. Sutterfield, 54 Mo. 394; Railroad v. Railroad, 94 Mo. 542; Stickler v. Tracy, 66 Mo. 465. A judgment, thought upon the merits or determining some substantial right, which leaves necessary further judicial action before the rights of the parties are settled, is not final. 1 Freeman on Judgments, sec. 16; State ex rel. v. Klein, 140 Mo. 510; State ex rel. v. Woodson, 128 Mo. 513; Railroad v. Express Co., 108 N. C. 24. A final judgment is the ultimate determination of the court upon the whole matter in controversy in the action. An order of the court, made in the progress of the cause requiring something to be done or observed, but not determining the controversy, is an interlocutory order and is sometimes called an interlocutory judgment. Pfeifer v. Crane, 89 Ind. 485; Finkelnburg & Williams on Appeals, pp. 58, 59; Greely v. Mo. Pac. Ry. Co., 123 Mo. 159; Voorhis v. B. & L. Assn., 59 Mo. App. 55; Rannells v. Washington University, 96 Mo. 226; Young v. Young, 165 Mo. 624. (3) A court of equity has discretion, governed by the equities of each case, to name terms upon which it will let in a party to redeem. Hannah v. Davis, 112 Mo. 599. (4) To prevail in any suit for redemption plaintiffs must pay off the debt, principal and interest, and if they fail and decline to do this, their bill will be rightly dismissed. In fact redemption is conditional upon payment of the amount due upon the mortgage debt, thereby causing plaintiff to do that which is equitable and just. Joplin v. Walton, 138 Mo. 492; Sampson v. Mitchell, 125 Mo. 217; Kline v. Vogel, 90 Mo. 239.

*Stonewall J. Walton* for respondents, Stonewall J. Walton and Rebecca L. Walton.

(1) Except in the cases specified by statute an appeal will lie only from a final judgment. R. S. 1919, sec.

1469. (2) An appeal does not lie from an interlocutory judgment. This is true even if the judgment is one that the court is without authority to enter. Halloway v. Halloway, 97 Mo. 628, 641. (3) A judgment is the final determination of the right of the parties in an action. R. S. 1919, sec. 1521; Deck v. Wright, 135 Mo. App. 536. (4) A judgment entry is not final so as to authorize an appeal unless it makes some disposition as to all parties to the record. (5) One final judgment must dispose of all the issues and all the parties in the case. Dixon v. St. Louis Transit Co., 197 Mo. App. 646, 648; R. S. 1919, sec. 1528; Cramer v. Barmon, 193 Mo. 327.; Baker v. City of St. Louis, 189 Mo. 375. (6) The appeal was premature and should be dismissed because no final judgment was rendered. Koeln v. Gould, 260 Mo. 499.

*Julius R. Nolte* for respondent, George A. Bode.

(1) A new and different cause of action cannot be substituted for the original. Clothing Co. v. Steidman, 120 Mo. App. 519. (2) Respondent Bode was not a party to the unlawful detainer and any finding as to the value of monthly rents, etc., in that suit is not evidence against or binding upon him. (3) Respondent Bode is entitled to a day in court and trial by jury before he can be held for damages. (4) The statement of account filed by appellants is a departure from the cause of action pleaded in the original petition; it creates a misjoinder of parties to such an extent that the issues cannot be determined between the parties. (5) The trial court committed no error in decreeing that respondent Bode have judgment on the account filed by appellant and that appellant take nothing thereunder.

SMALL, C.—This is the second time this case has been before this court. The petition was in equity, filed April 8, 1914, to cancel and set aside a trustee's sale and deed of certain lands made February 28, 1914, and to redeem the property from the deed of trust (which was executed by Mrs. Massey a prior owner) under which the

sale was made. The plaintiff company was the owner of the property, subject to the deed of trust; plaintiff Fred Hurst was its tenant; the defendant trust company was the trustee named in said deed of trust and owner of the Massey note secured thereby; defendant Bode was the Sheriff of St. Louis County, who was designated in the deed of trust to act as trustee in the absence or refusal to act of the trust company; defendant Stonewall J. Walton was the purchaser, for $17,605, at the foreclosure sale made by defendant Bode, the sheriff, as substitute trustee. On the original trial of the case in the circuit court, the court rendered judgment for the defendants, but on appeal to this court we reversed the judgment and remanded the case with directions. [216 S. W. 954.]

There was a charge in the petition that the property was sold by the sheriff as trustee, to Walton, at an inadequate price after lawful tender of the amount due on the note secured, and that "the said defendants and all of them had agreed and conspired together to force a pretended sale of said property by the said Bode, as aforesaid, for the purpose of unlawfully acquiring title and possession of the same at a price much less than the said property was worth, and that the refusal of the said trust company in the manner and form aforesaid and the said pretended sale of the said property by the said Bode as aforesaid were dictated by and made pursuant to the terms of the same unlawful agreement and conspiracy aforesaid."

An examination of the opinion of this court will show no evidence or finding of any intentional wrong-doing on the part of the defendant sheriff, and that he acted as substitute trustee in good faith on the written refusal of the trust company to act as such; nor is there any finding that any tender of payment of the Massey note or deed of trust was made before sale thereunder. But the court did find that there was an agreement between the trust company and Walton to discourage bidding at the trustee's sale and that Walton should become the purchaser. The court uses the following language in concluding its opinion and reversing and remanding the

case: ''The whole evidence leaves no doubt in the mind of this court that the price at which the land was sold was inadequate to the extent at least of $12,395, and that this inadequacy, or so much of it as operated to deprive the plaintiff corporation of the power to protect its own equity of redemption, was caused by the action of defendant Walton tending to suppress bidding; that the fact that the plaintiff corporation had not received its certificate to transact business in this State was unfairly used for the purpose of disabling it from saving the property until the sale could be held, and that the sale was hurried by the trustee with reference to these conditions. Under these circumstances no choice is left us other than to reverse the decree of the Circuit Court for St. Louis County, and remand the cause, with directions to enter its decree in proper form setting aside the said trustee's sale and the deed of trust to secure $13,000 executed by Walton and wife on the same day, for an accounting between the parties, and granting such reasonable time as to the court shall seem just and proper for the redemption of the property upon payment by the plaintiffs of the sum found to be justly due for that purpose, which is accordingly done.''

After Walton purchased the property at the trustee's sale he brought suit in unlawful detainer against plaintiff Fred Hurst, tenant of the plaintiff company, and obtained judgment and possession of the property. Also collected judgment from him or the sureties on his appeal bond for unlawful detention thereof. There is also a suggestion that Walton sold or transferred the property *pendente lite.*

Our mandate was in the usual form to the effect, among other things, that plaintiffs ''should be restored to all things lost by reason of the judgment'' reversed. Upon return of the case to the circuit court, the plaintiffs filed, on January 21, 1920, a petition or statement for accounting in the case, for rents and profits, damages and waste to the property, conversion of crops and costs and expenses of the litigation, including attorneys' fees and other expenses and costs of litigation not taxable as

costs.   There was also a claim for $929.26 on account of moneys paid out in satisfaction of the judgment defendant Walton obtained against the plaintiff Fred Hurst in said· unlawful detainer suit, which was paid by the bondsman of said Fred ·Hurst in said suit.   Also claim for $984 on account of extra amount paid out by said Fred Hurst for corn, hay and fodder, since being evicted from said property.   Plaintiffs also filed a motion for possession of the property.

On the 26th day of February, 1920, the defendant trust company filed a statement of account in said cause, showing that it was the owner of the note of Mrs. Massey for $16,850, dated February 4, 1911, and due three years after its date, with interest notes attached.   Also setting up the sale under the deed of trust securing said notes which was set aside and the purchase at said sale by defendant Walton, and setting out the purchase money in cash and notes which said Walton gave said trust company in payment of such purchase price and subsequent interest payments made by said Walton, and claiming that said sums were chargeable in the accounting herein. Defendant Bode filed a statement at the same time showing that he had paid over all the proceeds that came into his hands, $17,605 from the sale set aside, in paying the costs of the sale, and the balance on the note secured, and he prayed to go hence with his costs.

These matters of accounting on said petition and statement of the plaintiffs and of defendants trust company and Bode, coming on for trial, the court, on the objection of said defendants, refused to permit any testimony on the items contained in plaintiffs' petition or statement of account as against them—counsel for plaintiffs admitting he had no evidence they had ever been in possession of the property or committed waste thereon, but claiming they were jointly liable to account with defendant Walton under decision and mandate of the Supreme Court in the case.

The court then heard the evidence as to the amount due on the Massey note and deed of trust owned by the trust company, and found the amount to be, principal

and interest, $25,923.93.   There was evidence that on the day of sale, but just prior thereto, the plaintiffs had procured a party who offered to purchase the said Massey note, but the defendant trust company refused to sell it. No offer or tender of payment of said note was, however, made.   The court decreed that upon the payment of said sum found due with six per cent interest from the date of the decree, March 26, 1920, within thirty days from said date, said trustee's sale and deed to Walton should be set aside and for naught held, and that defendant trust company and Bode have judgment on the statement of account filed by plaintiffs, and that plaintiffs take nothing thereunder as against them, "the right being reserved to determine any matter arising between plaintiffs and defendant Walton after redemption."

Plaintiffs also duly filed motion for new trial.   Subsequently, said judgment was modified by reducing the amount due the said trust company on its said note and required to be paid by the plaintiffs in order to redeem, to $23,932.74.   Plaintiffs' motion for new trial and motion for possession of property were thereupon overruled. Nothing further seems to have been done with reference to the accounting between plaintiffs and defendant Walton.   Plaintiffs duly prosecuted their appeal to this court. Further matters in the record, relevant to the disposition of the appeal, may be mentioned in the opinion which follows.

I.   Learned counsel for respondent earnestly insist that this appeal was premature, because it was taken before an accounting was had between plaintiffs and defendant Walton, and therefore prior to

**Appeal:
Final
Judgment.** any final judgment as to all the parties. But we do so regard the judgment rendered.   Said decree adjudged that plaintiffs take nothing under their petition for accounting against defendants trust company and Bode, and was to the effect that they were entitled to no accounting at all

291 Mo.—5

against defendant Walton unless and until they redeemed the property, by paying the amount found due the trust company. This was a conditional decree, it is true, but it was a final decree that plaintiffs were entitled to no accounting against said Walton, until they made such redemption, which they might never do. This disposed of the whole controversy as to all the parties under the facts existing at the time the decree was rendered. Furthermore, the judgment of this court on the former appeal was a final judgment in the case and all orders made thereafter by the lower court were "orders after the final judgment in the cause," within the meaning of Section 2038, Revised Statutes 1909, from which appeals lie. We therefore rule this point against respondents.

II. It is claimed by learned counsel for appellants that the court erred in first requiring the plaintiffs to pay the amount due the trust company on the Massey notes and to redeem before setting aside and canceling the trustee's deed and sale to Walton. We agree with this contention. It will be seen by a reading of the directions in our opinion to the lower court, which we have quoted in our statement, that the first provision in the decree we directed it to make, was one setting aside said trustee's sale and the Walton deed of trust, and then for an accounting between the parties, and then to grant such reasonable time as the court might deem just for the redemption of the property upon payment by plaintiffs of the sum justly found due for that purpose. The plaintiffs were permitted to have a reasonable time for the redemption of the property—not from the trustee's sale—because that had been absolutely canceled and set aside, but from the Massey deed of trust, which the plaintiffs were to have a reasonable time to pay after the amount due thereon had been ascertained by the accounting. The trust company, which was the holder of the note as well as trustee named in the deed of trust, had been found guilty of unfair conduct in colluding with Walton to bring about the trustee's

*Reversal With Directions: New Conditions.*

sale to him, by the sheriff as substitute trustee, and hence justice demanded, and this court ordered, that plaintiffs should be reinstated in their rights, by absolutely annulling and setting aside such trustee's sale and deed of trust made by Walton, and extending the time of redemption from the Massey deed of trust, for a reasonable time after the amount owning thereon by plaintiffs had been determined by an accounting.

III. *As to the procedure and extent of the accounting against defendants by the plaintiffs.*

Not only are all the defendants required to account by the express language of our decree, but under the provision of the law and the mandate in such cases, the plaintiffs were entitled to be restored to all things lost, by reason of the judgment reversed, from any of the defendants who received what was lost by the plaintiffs, by reason of such judgment, and from third parties not innocent purchasers, from such defendants. Such restitution may be obtained by motion in the case, and no separate or new suit need be filed therefor. [Colburn v. Yantis, 176 Mo. 670; Lanyon v. Chesney, 209 Mo. 1, and cases cited; Turner v. Edmonston, 210 Mo. 411.] In the case at bar the judgment of the lower court against plaintiffs, which we reversed, prevented the plaintiffs from retaining possession of their property pending the litigation. Under our decree in reversing said judgment against them they were restored to their full rights to said property as if said Massey deed of trust was not in default and no sale had been made thereunder, and given a reasonable time to redeem from said deed of trust after an accounting had determined the amount due thereon. They were therefore entitled to possession of the property until reasonable time after such accounting and determination had expired and to a writ of possession therefor (Lanyon v. Chesney, 209 Mo. 1) as against all parties to the suit and persons not innocent

purchasers from the defendants (Turner v. Edmonston, 210 Mo. 411) and to an accounting for rents and profits or rental value of, and all waste and damage done to, the property, including crops damaged or converted during the litigation. They would also be entitled to recover "all taxable costs and expenses of appeal" which they paid. [Colburn v. Yantis, and other cases cited supra.] We also hold plaintiffs were so entitled to the amount paid to satisfy the judgment and costs in said unlawful detainer suit, whether paid by them or the sureties on their bond (for the benefit of such sureties, however, if paid by them). The proceeding, after the reversal of the judgment, to make restitution, whether by separate suit or motion in the case, is governed by broad equitable considerations. It is a question *ex aequo et bono* as in suits for money or property had and received. [Teasdale v. Stoller, 133 Mo. l. c. 652.]

A court of equity once in possession of the *res* and having jurisdiction of the parties will not relinquish its hold until it has done complete and adequate justice to all the parties. It has a long arm for so doing. [Real Estate Savings Inst. v. Collonious, 63 Mo. l. c. 290, and cases cited; School District v. Holt, 226 Mo. l. c. 415; Waddle v. Frazier, 245 Mo. 391; Woolum v. Tarpley, 196 S. W. 1128.]

But in such cases as the case at bar, there would be no liability to account for the plaintiffs' attorneys fees or other expenses in or about the litigation not taxable as costs under the statute, and no liability for speculative damages, such as the extra expense or cost of living or doing business or feeding stock, by being evicted from possession of the property. But the direct expense of moving away from and back to the property by reason of such eviction, would be a just charge against the defendant so evicting the plaintiffs.

IV. *As to plaintiffs' claim against the trust company for accounting.*

It is true that had the trust company purchased the property at the trustee's sale and thereafter being in possession of the property, it would, in such accounting, have been chargeable with the rents and profits while so in possession if allowed interest on its notes.  That much has been decided.  [Potter v. Schaffer, 209 Mo. 586.]    But it did not purchase the property at the trustee's sale, and never had possession of nor committed waste on the property, and had no interest whatever in the title or possession claimed by Walton.  Consequently, the said trust company was not liable to account for rents and profits or waste of the property.

V.  But learned counsel further claim that under the mandate in said cause the plaintiffs were to be "restored to all things lost by reason of the judgment" which this court reversed, and that under the judgment reversed plaintiffs lost the right to obtain possession and rents and profits of their property.  This is true, but said trust company, not having received such rents and profits, would not be accountable therefor *ex aequo et bono* as for money or property *had or received*.  [Teasdale v. Stoller, supra.]

VI.  But it is claimed that the defendant trust company was, by the judgment of this court, found guilty of a conspiracy with said Walton to bring about the Co-conspirator. trustee's sale which was canceled and set aside, and therefore it was liable as a co-conspirator with said Walton for all his acts after he purchased said property at such sale, including the taking possession thereof and committing waste thereon. We do not agree to this contention.  Said trust company was not found by us in our opinion in said cause, to be a conspirator with Walton, except to bring about such illegal trustee's sale to him.  So far as our opinion shows said trust company's only interest in conspiring with Walton was that it might carry out its agreement with him to permit him to purchase the property at the

trustee's sale for the amount he bid thereat, paying part of the purchase price in cash and giving his note for the balance, $13,000, to the trust company, secured by deed of trust on the property, The conpiracy of the trust company with Walton was ended, therefore, when said sale was made and it received the cash and notes and deed of trust of Walton for the purchase price. There was no evidence and no finding in our said opinion that the conspiracy of the trust company with Walton extended to his taking possession of or committing waste upon the property.

So that we rule that defendant trust company was not liable for rents and profits or waste of the property after the trustee's sale.

VII. The other charges in plaintiffs' petition (except the taxable costs in this suit paid by plaintiffs) for accounting are so obviously not matters for which the trust company was liable to account that they are not specifically contended for by learned counsel for appellant in his brief in this court, and need not be further noticed.

VIII. *As to the interest allowed the Trust Company.* It is said that Walton paid a certain amount in cash and afterwards paid the trust company interest on

Interest: Paid
by Purchaser.

his $13,000 note which he gave for the deferred payment at the trustee's sale, and therefore plaintiffs should not be required to pay the full amount of interest upon the Massey note in order to redeem. But we hold that the amount paid by Walton to the trust company is a matter of accounting between Walton and the trust company in which plaintiffs are not legally interested, as was held by the lower court. We overrule appellant's contention on this point.

IX. The lower court also properly allowed the trust company interest after the trustee's sale to the

date of the hearing on its claim for an accounting on the
Massey notes. The contention that
plaintiffs on the day of the sale made a
tender or offered to pay the notes and
interest and the trust company refused to receive it, is
not supported by the evidence. The evidence of both
parties simply shows that at the request of the plaintiff
Company, a Mr. Otto offered to buy the Massey notes
from the trust company on the day of sale, just prior
thereto, and the trust company refused to sell them.
This circumstance did not constitute a tender of payment
or anything equivalent thereto.

*Interest on Notes: Tender.*

X. *As to the accounting to plaintiffs by the sheriff,
defendant Bode.* Our opinion in this case did not find
said defendant guilty of any intentional wrongdoing or
dereliction of duty. He seems, from all the
record, to have acted in good faith—believing he
had the right to sell the property as such sub-
stitute trustee, on being notified by the trust company in
writing that it refused to make the sale and requesting
him to act as stipulated in the deed of trust. We hold
therefore that plaintiffs were entitled to nothing on their
statement or petition for accounting against defendant
Bode.

*Against Sheriff.*

XI. If plaintiffs see fit they may amend their
motion for accounting by filing a separate motion for
each plaintiff and also, by filing the proper motion and
giving due notice thereof, make any person a
party to such accounting who purchased or was
in possession of said property or received the use and
benefit or rents and profits thereof or committed waste
thereon and who was not an innocent purchaser thereof
after the plaintiffs suit was originally instituted.

*Parties.*

We therefore reverse the judgment of the lower
court with directions to enter its decree, first seting aside
and canceling the said trustee's sale and deed to Walton
made under the Massey deed of trust and said $13,000
deed of trust made by Walton to the said trust company,

and to sustain plaintiffs' motion for possession of said property, and then at such reasonable time as the court may fix proceed to hear and determine the respective claims of the parties to an accounting according to the views herein expressed, and upon such determination, including the finding of the amount due defendant trust company on the Massey notes and deed of trust, to allow plaintiffs a reasonable time thereafter to pay such sum and redeem from such deed of trust, who will not be considered as being in default until after the expiration of the time for payment and redemption so fixed and plaintiffs' failure to pay the same within such time; and if not so paid that said trust company may then proceed to foreclose its said deed of trust in such manner as it may be advised. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.