STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION OF MISSOURI,
Appellants-Respondents,

v.

Mary E. MORGANSTEIN, et al., Exc. of
Ardeis Myers, et al.,
Respondents-Appellants.

Nos. WD 33122, 33123.

Missouri Court of Appeals,
Western District.

Feb. 15, 1983.

As Modified March 29, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 29, 1983.

Application to Transfer Denied
May 31, 1983.

Bruce A. Ring, Chief Counsel, Earl H. Schrader, Jr., John B. Ewing, Jr., Asst. Counsel, Kansas City, for Missouri Highway and Transp. Commission.

Harry P. Thomson, Thomas F. Fisher, Shughart, Thomson & Kilroy, Kansas City, for Ardeis H. Myers, Exc. of Estate of Flora E. Myers.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

This case arose out of the State Highway Commission's attempt to recover part of a condemnation award which was made to Ardeis and Flora Myers. The trial court ruled that the estate of Mrs. Myers was obligated to repay $119,500. Both parties have appealed this result, the Highway Commission contending that Mrs. Myers' estate should be held liable for the full overpayment of $237,000, and Mrs. Myers' executors contending that she should be liable for either $2,000 or for nothing. Reversed and remanded.

This case began in July of 1970, when the State Highway Commission petitioned to condemn certain land owned by Ardeis Myers and Flora Myers as tenants by the entirety. On February 2, 1971, the commissioners assessed damages for the appropriation of the land at $387,000, and on February 25, 1971, the Myers were issued a check in that amount.[1] Both the Myers and the Highway Commission filed exceptions to the Commissioners' award, and the case was set for trial. On January 20, 1974, Ardeis Myers died. Notice of letters testamentary in his estate was first published July 10, 1974, and the Highway Commission's motion to substitute Mr. Myers' co-executors was made and sustained on May 13, 1975. The case was tried on May 24, 1976, and the jury returned a verdict assessing the Myers' damages at $150,000. The court ordered

---

1. The check also listed county and city collectors, the trustee of the deed of trust, and a former lienholder as payees. All of these parties endorsed the check, and no question is presented concerning their interest in the proceeds.

Mrs. Myers and the executors of Mr. Myers' estate to pay the Highway Commission the difference of $237,000 plus six percent interest from February 21, 1971. The case was appealed. *State of Missouri ex rel. State Highway Commission v. Morganstein*, 588 S.W.2d 472 (Mo. banc 1979). While the appeal was pending Flora Myers died, and three months later her executor was substituted in her place.

The Supreme Court ruled that the substitution of Mr. Myers' co-executors was untimely in that it had not been made within nine months after the first publication of letters of administration pursuant to § 507.100.1(3) RSMo 1969, and for that reason Mr. Myers' estate could not be held liable for any part of the $237,000. The Supreme Court concluded, however, that Mr. Myers' estate was not a necessary party to the proceedings. The Supreme Court then questioned the extent of Mrs. Myers' liability for the excess amount of the award, concluding that the case should be remanded for further evidentiary proceedings to explain what use was made of the original award, and specifically to determine to what extent Mrs. Myers actually or beneficially received the excess amount of the award, which amounted to $237,000.

On July 7, 1981, the trial court on remand made the following findings:

> I find that Mr. and Mrs. Myers operated as a joint enterprise. They held their property jointly ... [E]verything they did was for their joint benefit ... All of the proceeds of the check for this condemned property, except $2,000, was accounted for by purchases from which they both benefited, or to pay off obligations that benefited both...

The trial court concluded that the estate of Mrs. Myers was liable for one-half of the excess amount, or $119,500. Both parties have appealed this result. The Highway Commission contends that Mrs. Myers' es-

tate should be liable for all of the excess amount because Mr. and Mrs. Myers benefited jointly from the use of the proceeds. The executors of Mrs. Myers contend that she should be liable either for $2,000 [2] only or for nothing, on the grounds that she received no portion of the award either while her husband was alive, or as the surviving tenant by the entirety when he died.

In its earlier decision in this case, the Supreme Court stated that this case resembles the situation in which an already satisfied judgment is reversed on appeal, and the successful appellant is entitled to restitution of the money it lost by reason of the erroneous or void judgment. 588 S.W.2d at 477[3]. The Supreme Court further stated that such a proceeding is governed by equitable considerations, *Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis Co.*, 291 Mo. 54, 236 S.W. 58, 62[6] (Mo.1921), and that equity holds such a defendant liable to repay only that which he received of the proceeds, either directly or beneficially. 588 S.W.2d at 477[3], *citing White v. McCoy Land Co.*, 101 S.W.2d 763, 765[2] (Mo.App.1936), *Aff'd sub nom. White v. Scarritt*, 111 S.W.2d 18 (Mo.1937).

■ It is well established that equity follows the law, and that a court of equity just as a court of law is bound by established rules and precedents. *Hall v. Hall*, 506 S.W.2d 42, 45[11] (Mo.App.1974) and *Milgram v. Jiffy Equipment*, 362 Mo. 1194, 247 S.W.2d 668, 676[18] (Mo.1952). Thus, this case must be decided on the basis of equitable considerations in combination with the doctrines of tenancy by the entirety and joint liability.

The following facts regarding the use of the original award were revealed in the course of the second trial of this case.[3] Pursuant to the Myers' request, they were issued a check in the amount of $387,000 in

---

**2.** The executors arrived at this amount based on evidence that the $387,000 had been spent and that the full amount could be accounted for with the exception of $2,000. Thus, the executors concede that they might be liable for $2,000 but no more.

**3.** These facts are not in dispute. The Supreme Court held that the burden was on Mrs. Myers to prove that she was liable for a lesser amount. Pursuant to that holding, her executors produced records showing how all but $2,000 of the $387,000 was spent.

both of their names on February 23, 1971. On or about that same date, this check was deposited by the Myers into their joint checking account at the Suburban Bank and Trust Company. The balance in Mr. and Mrs. Myers' Suburban checking account before February 23, 1971, was $492. Shortly after the check for $387,000 was deposited, Mr. Myers wrote a check on the account in the amount of $211,454 to pay off the principal and interest on a note secured by a deed of trust signed by him and Mrs. Myers on the property which was the subject of the condemnation suit. On February 24, 1971, Mr. Myers wrote a check on the joint Suburban Bank account for $17,500 to Trimble Manor Farm, a property which was owned by Mr. and Mrs. Myers. Between March and August Mr. Myers spent $9,889 of the funds in the joint checking account on stocks purchased in both his and Mrs. Myers' names.

The total sum involved in the above transactions is $238,833. Since the jury's award of $150,000 was $237,000 less than the amount which the Myers had previously received for the condemnation, the use of the award need be examined only to that extent for the purpose of this case, rather than to the extent of the full $387,000.[4] As of December of 1971, nearly all of the original condemnation award had been disposed of, and the balance in the Suburban Bank account was down to $1,282. On August 15, 1973, Mr. and Mrs. Myers executed separate trust agreements, dividing all their properties into two equal halves and conveying it to a trustee.

The Supreme Court's opinion offers two alternatives for resolving this case, depending on the parties' explanation on remand as to how the funds were disposed of. One possibility which the court considered was that Flora Myers might have received all or part of the condemnation award as a tenant by the entirety upon her husband's death. In order to understand why this alternative is not applicable in light of the facts as revealed on remand, the doctrine of tenancy by the entirety must be examined.

A tenancy by the entirety is an estate that can exist only between husband and wife, and it is founded upon the legal fiction that husband and wife hold entirety property as one person. *Coffey v. Coffey*, 485 S.W.2d 167, 170[1] (Mo.App.1972). The essential characteristic of an estate by the entirety is that each spouse owns the whole estate rather than a share, moiety, or divisible part of the estate. Thus, the surviving spouse continues to hold title to the full entirety estate not by virtue of survivorship, but because there is no one to share it. *In Re King's Estate*, 572 S.W.2d 200, 211[20] (Mo.App.1978). Property accumulated by spouses during their marriage is, absent an agreement to the contrary, entirety property. *Fulton v. Fulton*, 528 S.W.2d 146, 158[30] (Mo.App.1975).

The Supreme Court relied on the case of *Whitlock v. Public Service Company of Indiana, Inc.*, 239 Ind. 680, 159 N.E.2d 280 (Ind.1959), for the following principle:

[I]f the proceeds [from property held by the entireties with the rights of survivorship] had been dissipated or disposed of before the wife died, then the husband took no part of such proceeds *by reason of her death*. There can be no tenancy by the entireties in proceeds which are no longer in existence (emphasis in original). 159 N.E.2d at 285[10].

In this case the evidence shows that there was no separate res, fund, or proceeds remaining at the time of Mr. Myers' death which constituted the proceeds from the real estate which was held by the entirety. Thus, this case does not fit into the first possible scenario considered by the Supreme Court, as Mrs. Myers acquired none of the proceeds of the condemnation award on Mr. Myers' death as a tenant by the entirety.

The second possible scenario contemplated by the Supreme Court was that if the facts as revealed on remand showed that

---

4. At trial evidence was presented that the rest of the $387,000 was used by Mr. Myers to pay off various debts and engage in business dealings. The trial court concluded that, with the exception of some $2,000, the use of the full $387,000 benefited both Mr. and Mrs. Myers.

the entirety property had been dissipated such that Mrs. Myers received none of it by the entirety upon her husband's death, her obligation to repay the excess amount of the award would hinge upon to what extent she received the funds in question either directly or beneficially while her husband was alive. 588 S.W.2d at 477.

■ In order for Mrs. Myers to be held not to have received the funds either directly or beneficially, the funds must have been used for Mr. Myers' sole benefit. The only way that Mr. Myers could have appropriated the proceeds from the award to his own use would have been by severing the tenancy by the entirety. A tenancy by the entirety may be severed during the lifetimes of the spouses only by joint and mutual action on the part of the husband and wife, and severance cannot be effected by the unilateral act, understanding, or conduct of one of the parties. *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 214[6, 7] (Mo.App.1979).

The Supreme Court's opinion cited with approval the case of *Cooper v. Freer,* 385 S.W.2d 340, 345[5–7] (Mo.App.1964), which states that the use of entirety funds by one spouse is a matter of intention to be determined from the facts and circumstances of the case. This raises a question as to whether the facts of this case demonstrate an intention on the part of the parties to sever the tenancy.

■ There are certain standards and presumptions which Missouri law imposes in determining whether or not such a severance was intended. One such presumption was stated in the case of *Ambruster v. Ambruster,* 326 Mo. 51, 31 S.W.2d 28, 37[7] (Mo.1930), which was cited with approval by the Supreme Court:

> [T]he joint form of the account, either or the survivor to draw, of itself alone raises a presumption of fact, or inference, that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were sev-

ered from the joint estate and appropriated by the drawer to his own use.

In addition to this presumption regarding joint accounts, Missouri follows the rule that purchases made by the proceeds of entirety funds become entirety property. In the absence of other factors, a tenancy by the entirety is presumed to follow entirety property on re-investment. *In re Baker's Estate,* 359 S.W.2d 238, 244[14] (Mo. App.1962); *Schwind v. O'Halloran,* 346 Mo. 486, 142 S.W.2d 55, 59[10] (Mo.1940); and *Frost v. Frost,* 200 Mo. 474, 98 S.W. 527, 529 (Mo.1906). Applying these presumptions to this case, the excess amount of $237,000 derived as proceeds from the condemnation was entirety property, and the purchases made with these funds and debts paid with it are presumed to have been spent as entirety property, in the absence of other factors.

The facts of this case as revealed on remand and as viewed by the trial court support the presumptions that there was no severance of the tenancy, and that Mrs. Myers received the funds beneficially. The $211,000 note and deed of trust which was paid off out of the proceeds from the award was signed by both Mr. and Mrs. Myers. Thus, under the doctrine of joint and several liability they were each liable for the full amount owed on this obligation. *Hahn v. Hahn,* 297 S.W.2d 559, 566[6] (Mo. banc 1957). Accordingly, the payment of this debt benefited Mrs. Myers in the full amount of $211,000.

In addition, according to the legal fiction of tenancy by the entirety, Mr. and Mrs. Myers each owned the full sum of $237,000. This fiction is supported in this case by the fact that the payment of the note secured by the deed of trust, the stock purchases, and the payment to the Trimble Farm each benefited both Mr. and Mrs. Myers. Since the money was used to benefit both of them, there was no severance of the entirety. Both Mr. and Mrs. Myers owned and made beneficial use of the $237,000 and each is therefore liable under the doctrines of equity, joint liability, and tenancy by the

entireties for the repayment of the full amount.[5]

Mrs. Myers' executors argue that the estate is not liable because the evidence showed that the $387,000 had been spent or dissipated, with the exception of $2,000, before the death of Mr. Myers. In essence, their argument is simply that because the money was spent, there can be no liability. This theory is diametrically opposed to the Supreme Court's holding concerning the equitable doctrine of liability for money beneficially received. In a larger sense, the argument that there can be no liability simply on the ground that money received has been spent or dissipated is a concept unknown to law or equity.

Thus, the trial court erroneously applied the standard articulated by the Supreme Court in this case by finding Mrs. Myers' estate liable for only one-half of the excess rather than the full amount. The judgment is reversed and this cause is remanded with directions to enter judgment for the State Highway Commission and against the estate of Flora E. Myers in the amount of $237,000 plus interest from February 21, 1971.

All concur.

### ON MOTION FOR REHEARING OR TRANSFER

PER CURIAM.

The executors of the estate of Ardeis Myers filed a Motion for Rehearing of this case, contending that this court erred in finding that Trimble Manor Farm, an entity which received a $17,500 check from the proceeds of the condemnation award, was owned by Mr. and Mrs. Myers.

█ It is well established that on appeal, the Court of Appeals must defer to the trial court's findings of fact unless they are against the weight of evidence. *Atkinson v. Be-Mac Transport, Inc.,* 595 S.W.2d 26, 28[3] (Mo.App.1980). In this case, the trial judge found that except for $2,000, all of the proceeds of the check awarded for the condemned property were used to benefit Mr. and Mrs. Myers jointly. Subsumed in this finding is a finding that the payment of $17,500 to Trimble Manor Farm benefited Mr. and Mrs. Myers jointly.

The only point in the transcript at which the $17,500 check to Trimble Manor Farm is discussed is in the course of direct examination by the Highway Commission's counsel of Nancy Hudson, who had served as Mr. Myers' bookkeeper. In the course of the examination, counsel questioned Mrs. Hudson regarding each disbursement that was made from the proceeds of the award. When he reached the entry regarding the $17,500 check to Trimble Manor Farm, the following exchange took place:

Q All right. Now, the next item, Mrs. Hudson, you note is a payment of—it is a check for $17,500, and you show it as being paid to Trimble Manor Farm; is that correct?

A That's correct.

Q Mrs. Hudson, do you know who owned Trimble Manor Farm as of 2/25/71?

A The property was owned by A.J. and F.E. Myers.

Q That is the land, the farm itself?

A That's correct.

There was evidence that Mr. Myers and his son operated Trimble Manor as partners, but as the above excerpt reveals, Mrs. Hudson made no mention of that partnership on the only occasion that she was questioned regarding the check at issue.

█ The above evidence supports a finding that Mr. and Mrs. Myers benefited equally from the $17,500 expenditure to

---

**5.** This is not to say that Mrs. Myers' estate could not subsequently go against Mr. Myers' estate for contribution. The courts are split on this issue, with the majority of jurisdictions holding that a spouse is entitled to equitable contribution out of the estate of the other spouse in reimbursement for the payment by the first spouse of more than his equitable share of their joint obligation, even though the debt related to the proceeds of real property which was held by the spouses as tenants by the entirety. *See* Annot., 76 A.L.R.2d 1004 (1961).

Trimble Manor Farm. Thus, this court must defer to the trial court's overall finding that Mr. and Mrs. Myers benefited jointly from the use of the condemnation award.

The rule requiring that this court defer to the trial court's findings of fact applies even in cases in which the trial court is reversed on its application of the law. In reviewing a court-tried case, the Court of Appeals must reverse the trial court's judgment if it is based on an erroneous application of the law. *Morris v. Travelers Insurance Company,* 546 S.W.2d 477, 488[9] (Mo.App.1977). In *Morris,* the court reversed the trial court on its application of the law, but deferred to the trial court's findings of fact. 546 S.W.2d at 479. Applying that rule to this case, the trial court's finding that Mr. and Mrs. Myers benefited jointly from the use of the award must be deferred to by this court, in spite of the fact that this court reversed the judgment on the basis of the trial court's application of the law.

The motion for rehearing is overruled and the motion to transfer is denied.