**MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,**
*Appellant,*

v.

**COMMERCE BANK OF KANSAS
CITY, N.A., Patrick A. Lawler
and A.H. Myers, Jr., Respondents.**

No. WD 40326.

Missouri Court of Appeals,
Western District.

Nov. 8, 1988.

Appellant's Motion for Rehearing and/or
Transfer to Supreme Court Denied
Dec. 27, 1988.

Respondent's Motion for Transfer
Denied Dec. 27, 1988.

Application to Transfer Denied
Feb. 14, 1989.

Thomas William Rynard, Government Counsel, Jefferson City, for appellant.

James R. Borthwick, Kansas City, for respondents Commerce Bank and Lawler.

Robert R. Raymond, Kansas City, for respondent Myers.

Before COVINGTON, J., Presiding, and NUGENT and GAITAN, JJ.

COVINGTON, Judge.

The Missouri Highway and Transportation Commission appeals from the entry of summary judgment against it by the trial court.

The tortuous and lengthy procedural history of this case may be found in three prior appellate opinions. *State ex rel. State Highway Comm'n v. Morganstein*, 588 S.W.2d 472 (Mo. banc 1979); *State ex rel. State Highway Comm'n v. Morganstein*, 649 S.W.2d 485 (Mo.App.1983); and *State ex rel. Missouri Highway & Transp. Comm'n v. Morganstein*, 703 S.W.2d 894 (Mo. banc 1986). (*Morganstein III*) See also *Commerce Bank of Kansas City, N.A. v. Randall*, 675 S.W.2d 687 (Mo.App. 1984).

The case which is presently before this court involves an eight-count petition filed by the Missouri Highway and Transportation Commission ("Commission") against Commerce Bank of Kansas City, N.A., (Bank), Patrick A. Lawler (Lawler), and A.H. Myers, Jr. (Myers). The allegations contained in the Commission's petition arise from the Commission's dealings with the defendants in connection with a condemnation case which began over seventeen years ago.

Because the facts set forth in the *Morganstein III* opinion, although lengthy, provide the most concise summary of events which have transpired in this litigation, and since the facts presented there are relevant because the Commission has requested that this court interpret the holding of *Morganstein III*, this court adopts the facts set forth therein:

In July, 1970, the State Highway Commission petitioned to condemn certain land owned by Ardeis Myers and Flora Myers as tenants by the entirety. In February, 1971, the condemnation commissioners assessed damages for the ap-

propriation at $387,000, and issued the Myers a check in that amount. Both the Myers and the Highway Commission filed exceptions to the award and in May, 1976, the case went to trial.[1] The jury assessed the Myers' damages at $150,-000, $237,000 less than the condemnation commissioners' award. As a result, the trial court ordered the Myers to repay the Commission the $237,000 difference, plus interest. The Myers' filed a notice of appeal from this adverse judgment, but failed to file a supersedeas bond.

In December, 1977, the Commission sought execution on the Myers' house. The Myers unsuccessfully moved to quash the execution, and also failed in their efforts to gain a writ of prohibition against the proposed action. On January 5, 1978, a member of the Myers' family, the family's attorneys, the Commission's attorney, and a Bank official met to consider the use of a letter of credit rather than a supersedeas bond to stay execution on the house.

As a result of this meeting, the Bank issued a document which stated, *inter alia*, that it was a letter of credit, effective for one year, (January 5, 1978 to January 5, 1979), and that upon presentation to the Bank of certain documents, the Bank would pay up to $350,000 to the Highway Commission. [Terms of letter of credit are omitted.]

The Bank charged the Myers a fee for the issuance of the letter of credit, and obtained a promissory note from them in the amount of $350,000. The promissory note was to be activated in the event that the Highway Commission drew upon the letter of credit and was secured by various properties, including a first deed of trust on the property which had been subject to the execution. For its part, the Commission agreed to accept the letter of credit in lieu of a supersedeas bond, and also agreed to dissolve its pending execution on the house. Beyond these facts, the parties disagree as to the

---

**1.** Both Ardeis and Flora Myers died early in the course of the litigation. Questions involving the substitution of executors, and the liability of the respective estates were addressed in the prior

opinions noted above. For the sake of clarity however, we shall continue to refer to the defendants in the underlying action as the "Myers".

full scope and effect of the "agreement" reached at this meeting. Upon joint application of the Myers and the Commission, the Western District approved the security pursuant to Rule 81.10.

In June, 1978, the Western District affirmed the trial court's judgment. However, this Court granted the Myers' application for transfer. While the matter was pending before this Court, counsel for the Commission contacted counsel for the Myers and expressed concern that, by its own terms, the letter of credit was due to expire before the appellate process had run its course. The Myers therefore requested that the Bank renew the letter of credit for another year, (until January 5, 1980), and also asked that the stated limit be increased to $362,760 to cover the additional interest that would accumulate. After receiving additional security, the Bank renewed the letter of credit for another year and increased its stated limit to $362,760.

In September, 1979, this Court affirmed the amount of damages awarded for the taking, but remanded the matter for a determination of the liability of each individual defendant with regard to the excess award. *Morganstein, supra,* 588 S.W.2d at 481. With the end of the year approaching, and no final resolution imminent, the Highway Commission again asked that the Myers obtain a one-year extension of the letter of credit. Upon request by the Myers, the Bank renewed the letter of credit in the same face value, with a new expiration date of January 5, 1981.

No significant litigation activity occurred during 1980. In early January, 1981, the Bank extended the letter of credit until January 5, 1982, at the request of the Myers. The face value of the document as renewed remained at $362,760.

In July, 1981, the trial court on remand found that Mrs. Myers had the use and enjoyment of only one-half of the condemnation proceeds, and entered judgment against her estate in the amount of $119,500. Both the Commission and Mrs. Myers appealed.

In October, 1981, the Myers' attorneys informed the Commission that when the existing letter of credit expired on January 5, 1982, the renewed letter of credit would be modified to reflect a reduced face value, since the judgment had been cut in half. In early January, 1982, the Myers communicated their desire to renew the letter of credit at a reduced amount to Commerce Bank. On January 4, 1982, the Bank mailed the Commission a copy of the renewed letter of credit, modified to show a face value of $204,-950. Counsel for the Commission received word of the reduction sometime in the second week of January, 1982. In correspondence with the Myers' attorneys, counsel for the Commission protested the reduction in face value of the letter of credit. Counsel did not, however, notify the Court of Appeals of its objections to the modified letter of credit.

In January, 1983, the Myers requested and received from the Bank another one-year extension of the letter of credit to January 5, 1984. The face amount of the letter of credit remained at $204,950.

The Western District reversed the trial court's determination and remanded the case with directions that the Circuit Court enter judgment against the estate of Flora Myers for the entire amount of the condemnation overpayment, with interest from February, 1971. *Morganstein, supra,* 649 S.W.2d at 490. In June, 1983, the trial court entered judgment against the estate in the amount of $477,922.81. The Commission then attempted to draw on the letter of credit by submitting to the Bank the court order described in paragraph 1 of the letter of credit along with a draft in the amount of $478,494. The Bank refused to honor the draft because it exceeded the $204,950 maximum amount of credit provided by the instrument in its last renewal.

In August, 1983, the Commission filed a motion with the circuit court asking that Commerce Bank be brought into the lawsuit pursuant to Rule 81.11, and that summary judgment be entered against

the Bank. The Bank denied jurisdiction and liability. The trial court heard evidence in October, 1983, found in favor of the Commission, and entered judgment against the Bank in the amount of $415,626.58.

*Morganstein,* 703 S.W.2d at 895–97 (footnote 2 omitted).

The Bank appealed from the order entered against it. After transfer from this court, the supreme court in *Morganstein III* determined that the trial court was without jurisdiction to proceed against the Bank under Rule 81.11.

Subsequent to the *Morganstein III* opinion, the Commission filed an eight-count petition against Commerce Bank, Patrick Lawler, and A.H. Myers, Jr., which forms the basis for the present appeal. The Commission's counts against the Bank include breach of contract to act as surety, prima facie tort, and civil conspiracy. The Commission sued Lawler for exceeding the authority of his corporate office as an officer of the Bank. The counts against Myers include civil conspiracy, prima facie tort, abuse of process, and fraudulent misrepresentation. Upon motions for summary judgment presented by all parties, the trial court granted summary judgment for defendants Bank and Myers and denied the motion for summary declaratory judgment filed by the Commission.

## I

Although the trial court's order granting summary judgment in favor of the respondents does not specify the ground or grounds upon which the court based its order, the Commission apparently assumes that the holding of *Morganstein III* was the ground upon which the trial court granted summary judgment. The Commission's sole point on appeal asserts that the trial court mistakenly believed that the supreme court in *Morganstein III* decided the factual issue of whether the Bank had agreed to act as surety for the judgment against Flora E. Myers, thereby collaterally estopping the Commission from litigating the issue in the present case.

The Bank and Myers, in support of the trial court's order, assert that the *Morganstein III* opinion would necessarily have held, by implication, that the letter of credit and the facts concerning the relationship among the parties did not create a suretyship relationship. Thus, they contend, the question of whether or not a suretyship relationship existed has been finally determined by *Morganstein III.*

The defendants' characterization of the opinion as having had necessarily to decide that there was not a suretyship relationship because, implicitly, if there were, Rule 81.11 would have provided jurisdiction over the Bank, is not unreasonable. Were it not for the court's own characterization of the issue as being narrowly focused upon the written document, the letter of credit itself, the determination of this court might well be different. The supreme court opinion holds only, however, that, on the basis of the letter of credit, the Bank's obligation to the Commission is primary; therefore, no summary procedure is necessary or appropriate so as to permit the trial court's jurisdiction pursuant to Rule 81.11.

*Morganstein III* focuses solely upon the written document. The second sentence of the opinion characterizes the issue before the supreme court as being "whether the trial court has jurisdiction over Commerce Bank (hereafter the Bank) under Rule 81.11 as a result of a *letter of credit* issued to the Missouri Highway and Transportation Commission (hereafter the Commission) by the Bank on behalf of Flora E. Myers." *Morganstein,* 703 S.W.2d at 895 (emphasis added). The court characterizes the narrow issue again in dismissing the question raised by the Commission of whether or not a standby letter of credit possesses characteristics common to suretyship:

Whether such letters of credit possess, to a greater or lesser degree, characteristics common to suretyship is irrelevant, however, since *the only question pertinent in the present case is whether the letter of credit issued here provides a sufficient predicate for the trial court*

*to exercise jurisdiction pursuant to Rule 81.11.*

*Id.* at 899 (emphasis added).

The supreme court opinion acknowledges the Commission's argument that the letter of credit, along with the facts concerning the relationship among the parties, created a suretyship relationship between the Bank and the Commission so as to bring the Bank within the court's jurisdiction pursuant to Rule 81.11. The court notes that the Commission asserted that the letter of credit did not embody the entire agreement of the parties, but, rather, the terms of the agreement were contained in a follow-up letter prepared by the Commission's counsel, along with the testimony and conduct of the parties, which, when evaluated in context with the letter of credit itself, created a three-party agreement tantamount to a surety relationship. *Id.* at 897–98. The court acknowledges awareness of the Commission's argument that the terms of the written document had been varied by certain claimed oral representations and modes of conduct. *Id.* at 900. Nevertheless, the court states that the Commission's claims do not change the document's essential character as a letter of credit. "In either event, the Bank's obligation is primary and independent of that of its customer, and contingent only upon the propriety of the underlying documents presented to the Bank for payment. Since the document in question here is a letter of credit and not a supersedeas bond, the trial court is without jurisdiction to proceed against the Bank under Rule 81.11." *Id.* The supreme court did not decide the question of the existence of a suretyship relationship. In the present· case, therefore, the trial court could not have properly entered summary judgment in favor of the defendants on Count I—breach of contract to act as surety.

## II

■ The trial court's order does not specify the ground or grounds upon which the court based its order granting summary judgment to the defendants on all counts. Review of summary judgment is equivalent to review of a court-tried or equity proceeding, and, if, as a matter of law, the judgment is sustainable on any theory, the judgment of the trial court must be sustained. *Snowden v. Northwest Mo. State Univ.,* 624 S.W.2d 161, 165 (Mo. App.1981).

In response to the Commission's appeal, the defendants have raised alternative grounds for affirmance of the trial court's order. The Bank raises the statute of frauds, § 432.010, RSMo 1986, as one ground upon which the trial court could have entered judgment in its favor. The abbreviated record on appeal, to which the parties stipulated, fails to show what, if anything, was submitted to the trial court as to this defense. Less than one page of the Bank's brief is devoted to this argument, and it makes no reference to the record. Consequently, this court cannot review the question. The issue, however, may be presented to the trial court upon further proceedings.

■ Myers asserts that the Commission failed to state a cause of action for civil conspiracy.

A civil conspiracy is "an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Rosen v. Alside, Inc.,* 248 S.W.2d 638, 643 (Mo.1952). Although there is a split among jurisdictions, Missouri holds the contracting party liable if he conspires with third parties to breach the contract. *Lick Creek Sewer Sys., Inc. v. Bank of Bourbon,* 747 S.W.2d 317, 323 (Mo.App.1988).

The Commission's count against Myers for civil conspiracy asserts that Myers "did wrongfully conspire with Commerce Bank to injure the Highway Commission by agreeing to breach *their promise* to the Highway Commission to maintain a letter of credit in an amount sufficient to cover any final judgment entered by the circuit court." (Emphasis added). The petition asserts an agreement between the Commission as promisee and Myers and the Bank as joint promisors. The Commission pleads no separate and distinct contractual duties of the Bank and Myers toward the Commis-

sion. Because, as pleaded, no third party was involved, Missouri cases allowing liability in conspiracy where a third party is involved are not applicable. *See Lick Creek*, 747 S.W.2d at 317, and *Rosen*, 248 S.W.2d at 638.

The question then becomes whether contracting parties may be held liable for civil conspiracy when there is no third party involved in the conspiracy. The court in dictum in *Lick Creek*, 747 S.W.2d at 323, stated "[w]ithout deciding the question, we doubt that one party to a contract can have a cause of action against other parties to the same contract under the theory of unlawful civil conspiracy unless a third party is involved in the conspiracy." Although Missouri courts have not directly addressed the question, other jurisdictions have held, without extensive analysis, that one does not have a cause of action against another contracting party for conspiracy to breach the agreement between them. *See, e.g., Meyer v. Bell & Howell Co.*, 453 F.Supp. 801, 802 (E.D.Mo.), *appeal dismissed*, 584 F.2d 291 (8th Cir.1978); *Lyon Ford, Inc. v. Ford Mktg. Corp.*, 337 F.Supp. 691, 694 (E.D.N.Y.1971). The basis for such holdings may be grounded in the belief that the claim is more appropriately pleaded as a breach of contract. *See, e.g., Miller v. Vanderlip*, 285 N.Y. 116, 33 N.E.2d 51, 56 (1941). Following the suggestion of the southern district of our court in *Lick Creek, supra*, this court holds that one party to a contract may not have a cause of action against other parties to the same contract under a theory of unlawful civil conspiracy unless a third party is involved in the conspiracy. Even giving all favorable intendments to the Commission's pleading, Myers is not identified as a third party. Furthermore, Myers cannot conspire to breach a contract to which he himself is a party. Accordingly, the judgment of the trial court with respect to Count IV is affirmed.

Myers also contends that the Commission failed to state a cause of action against him for abuse of process and, thus, judgment was warranted on Count VI of the Commission's first amended petition.

■■■ The petition does not state a claim for abuse of process. The elements of a claim for abuse of process are: (1) an illegal, improper, perverted use of the process that is not warranted or authorized; (2) an improper purpose in exercising such illegal, improper, or perverted use of the process; and (3) resulting damages. *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. banc 1979). The essence of the cause of action is the misuse of process to accomplish an unlawful end or to compel the defendant to do some collateral act which he could not legally be compelled to do. *Moffett v. Commerce Trust Co.*, 283 S.W. 2d 591, 600 (Mo.1955), *cert. denied*, 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861 (1956).

■■■ The Commission's pleading alleges that Myers filed an appeal from the judgment entered July 6, 1981, which reduced the liability of the estate of Flora Myers from $237,000 to $119,500 "to allow him to order a reduction in the amount of the letter of credit ... and to allow said letter of credit to expire without thereafter amending the expiration date on the letter of credit or reissuing the letter of credit." The Commission does not allege, however, that the reduction in the letter of credit was not authorized by the appeal, nor does the Commission allege that the reduction was not legitimate. The Commission merely alleges that the process was used for the purpose of denying the Commission of "any amount of an increased judgment plus accumulated interest over the amount of the letter of credit." Abuse of process will not lie where, even if the motive is bad, the use of process was within the right of the defendant. *Id.* Myers pursued a legal right when he appealed. While the case was on appeal, the letter of credit was reduced to an amount to cover the judgment at that time. The Commission has therefore failed to state a cause of action for abuse of process. The judgment as to Count VI of the petition is affirmed.

The judgment of the trial court with respect to Counts II, III, V, VII, and VIII, not having been presented for review, are presumed correct and are affirmed. *Roy-*

*ster v. Baker,* 365 S.W.2d 496, 499 (Mo. 1963). Rule 84.04(d).

Because of the disposition of Counts II through VIII, it is unnecessary to address the question raised by Myers of the Commission's authority to bring suit in intentional tort when not specifically authorized by statute to do so.

The judgment of the trial court with respect to Counts II through VIII is affirmed. As to Count I, the question of the effect of the holding of *Morganstein III,* the judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.